Affirmed and Opinion filed July 30, 2009








Affirmed
and Opinion filed July 30, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00236-CR

_______________

 

MARCUS ANTHONY WILSON, Appellant

 

v.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1055167

                                                                                                                                                

 

O P I N I O N








Appellant,
Marcus Anthony Wilson, was arrested and charged with burglary of a habitation
with the intent to commit aggravated sexual assault, a first-degree felony.  See
Tex. Penal Code Ann. ' 30.02(a), (d) (Vernon 2003).  He confessed that he entered
the complainant=s home without her consent, pushed her to the floor, and
brandished a knife which he then used to cut her pants off.  Before trial
began, the court denied appellant=s motion to suppress his confession, eventually
finding that it was knowingly and voluntarily given.  The jury then convicted
appellant of the charged offense and sentenced him to fifteen years= imprisonment.  See Tex. Penal
Code Ann. ' 12.32(a) (Vernon 2003).

Appellant
raises two issues on appeal.  First, he contends the trial court, having denied
his motion to suppress his confession, was required to explain its ruling
through findings of fact and conclusions of law.  That first issue is now moot
because, in response to our order, the trial court has made the requisite
factual findings and legal conclusions.  Second, appellant asks us to reverse
his conviction on Sixth Amendment grounds because, during the punishment phase
of trial, an investigating officer testified about statements uttered by an
out-of-court witness as to a collateral crime.  We hold that the admission of
those statements did not result in harm to the appellant.  Therefore, we affirm
the conviction.

                                                                             I.

             Trial Court=s Findings of Fact and Conclusions
of Law

In the
trial court, but not on appeal, appellant claimed that his written confession
was involuntarily given, and he filed a motion to suppress.  The trial court
conducted a hearing on the voluntariness of the confession.  After hearing
testimony from several witnesses, the court denied the motion to suppress and
permitted the confession to be introduced into evidence.  Having concluded that
appellant=s statement was voluntarily made, the trial court was obligated to issue
an order stating its conclusion and the specific facts that support its
ruling.  See Tex. Code Crim. Proc. Ann. art. 38.22, ' 6 (Vernon 2005).  However, the trial
court initially failed to do so.








In his
first issue on appeal, appellant notified us of the trial court=s failure to comply with article
38.22.  Therefore, we abated the appeal and directed the trial court to prepare
and file the requisite factual findings and conclusions.  See Wicker v.
State, 740 S.W.2d 779, 784 (Tex. Crim. App. 1987).  On February 17, 2009,
the trial judge complied by filing written findings of fact and conclusions of
law supporting his ruling that appellant=s statement was knowingly and
voluntarily given.  The trial judge specifically found, among other things,
that:

(1)       the testimony given by three law-enforcement officers was
credible, but the appellant and his former girlfriend were not believable
witnesses;

(2)       appellant was made aware of, but voluntarily waived, his
constitutional and statutory rights under the United States Constitution, Texas
Constitution, and Texas Code of Criminal Procedure;

(3)       appellant=s confession
was not the product or result of any law-enforcement promises or coercion;

(4)       appellant=s written
statement was obtained in compliance with article 38.22; and, therefore,

(5)       appellant=s confession
was knowingly and voluntarily given.

 

Although we offered to
consider supplemental briefing following the entry of the trial court=s findings and conclusions,[1]
appellant does not contest the trial court=s findings or conclusion that his
confession was voluntarily given.  Thus, we are left with an issue that was
rendered moot by the filing of a supplemental clerk=s record containing the trial court=s findings of fact and conclusions of
law.  See Allen v. State, 795 S.W.2d 15, 16 (Tex. App.CHouston [14th Dist.] 1990, no pet.). 


We
overrule appellant=s first issue as moot.  Next, we address appellant=s second issue, in which he claims he
was deprived of his right to confront a witness during the punishment phase of
trial.  

We begin
with a recitation of the background facts.  Because the resolution of this
appeal requires us to analyze the overall strength of the prosecution=s case for punishment,[2]
we are unfortunately compelled to relate the graphic details of the alleged
assault against the complainant.








                                                                            II.

                                                     Factual Background

At noon
on September 20, 2005, the complainant, a 32-year-old mother of five children,
walked to her kitchen to prepare a bottle for her newborn daughter.  There, she
discovered that a black male, whom she later identified as appellant, had
forcibly broken into her house and was waiting for her in the kitchen with a
knife.  She testified that appellant struck her, threw her forcibly to the
floor, and then grabbed her from behind.  

The
complainant further testified that, after making crude comments about her
genitals, appellant dragged her to the bathroom and, using hand gestures,[3]
instructed her to take her clothes off.  She resisted and, during the ensuing
struggle, appellant sliced her hand with the knife, choked her, and threw her
down against the bathroom tub.  Appellant also cut her pants off and tore her
blouse open, leading her to believe he planned to rape her.  She further testified
that he groped her breasts and vagina, unzipped his pants, and began
masturbating.

According
to the complainant, appellant then beat her and kicked her in the head and
abdomen.  Hoping to placate him, she called out to her three-year-old son to
offer her purse and jewelry to appellant.  She testified that appellant kicked
her son, who was very frightened by the entire ordeal, but that appellant
ultimately accepted the jewelry, kissed the complainant on the cheek, and then
left the apartment.








Appellant
was apprehended in January 2006, and the complainant identified him as her
assailant.  Appellant confessed in writing to the burglary, and the recitation
of the facts contained in the confession is similar to the complainant=s account of the assault.[4] 
However, notwithstanding the sexual nature of the assault, appellant insisted
that his intent, when he entered the apartment, was merely to commit theft.

Appellant
pleaded Anot guilty@ to the indicted offense of burglary
of a habitation with the intent to commit aggravated sexual assault.  He
offered no testimony, witnesses, or evidence during his case-in-chief. 
Instead, while conceding that appellant entered the apartment, the defense
contended that he intended only to commit theft, not aggravated sexual
assault.  Apparently rejecting that defense, the jury convicted him of the
indicted offense.  Appellant elected to have the jury assess punishment.

During
the punishment phase, which began the following day, the State re-introduced,
and the trial court admitted, all of the evidence offered during the
guilt-innocence portion of trial.  In addition, the jury heard from Officers
Freddie Castillo and Felipe Gallegos, both of whom testified about appellant=s alleged commission of another
burglary six months later.

Specifically,
Gallegos testified without objection that, on January 23, 2006, he received a
police dispatch about a home that was being burglarized.  When Gallegos arrived
at the crime scene, Castillo, the first responder, was already speaking with
the complainant, Esmeralda Baez.  Castillo then broadcast the suspect=s physical description and likely
direction of travel to Gallegos and other law-enforcement personnel, who
established a perimeter.  Within seven or eight minutes, Gallegos, who received
assistance from several onlookers, apprehended appellant, who matched the
suspect=s physical description.  At the time
of his arrest, appellant was wearing a backpack that contained several items
commonly used in home burglaries, including white latex gloves, Velcro
tie-downs, a knife, and a box-cutter.  The backpack and its contents were
admitted into evidence, without objection.








Castillo
also testified about the January burglary and, over appellant=s confrontation-clause objection,[5]
testified about some of Baez=s statements to him.  Specifically, before appellant was
apprehended, Baez told Castillo that she had seen appellant attempting to enter
her home while wearing white latex gloves.  In addition, Castillo testified
that, after Baez saw that appellant had been taken into police custody, she
blurted out, AThat=s him.  That=s him.@  The trial court overruled appellant=s objections to the admission of Baez=s statements.

Appellant
did not testify during the punishment phase and did not ask the jury to
consider community supervision.  Instead, the jury was instructed to assess
punishment at confinement for any term of at least five years but no more than
ninety-nine years or life.  See Tex. Penal Code Ann. ' 12.32(a).  The jury sentenced
appellant to confinement for fifteen years.

In his
second issue on appeal, appellant contends that Baez=s statements to Castillo, concerning
the subsequent burglary, were Atestimonial@ and therefore barred by the Sixth Amendment=s Confrontation Clause, and that he
was harmed by the admission of those statements.  We hold that Baez=s initial statements to Castillo were
non-testimonial, and that the trial court did not err by admitting them into
evidence.  We further hold that, even if the trial court erred by admitting
Baez=s subsequent identification,
appellant was not harmed by the evidence.  Therefore, we will overrule his
second issue.

                                                                           III.

                                                   Confrontation Clause

The
Sixth Amendment to the United States Constitution affords a criminal defendant
with the right Ato be confronted with the witnesses against him.@  U.S. Const. amend. VI.  This
provision, known as the Confrontation Clause, prohibits the admission of Atestimonial@ statements by a witness who does not
appear at trial, unless the witness was unavailable to testify and the
defendant had a previous opportunity to cross-examine him.  Crawford v.
Washington, 541 U.S. 36, 53B54 (2004).  








Appellant
did not have a prior opportunity to cross-examine Baez.  Therefore, the
admissibility of her statements, as offered through Officer Castillo=s testimony, turns upon the threshold
question of whether the statements were testimonial.  See Vinson v. State,
252 S.W.3d 336, 338 (Tex. Crim. App. 2008); Campos v. State, 256 S.W.3d
757, 761 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).  We review a constitutional legal
ruling, including whether a statement is testimonial, de novo.  Campos,
256 S.W.3d at 761.

A.        ATestimonial@ Statements

In Crawford,
the United States Supreme Court declined to define the term Atestimonial@ but indicated that, at a minimum,
the term encompasses certain categories of statements, including those Ataken by police officers in the
course of interrogations.@  Crawford, 541 U.S. at 52, 68.  However, in Davis
v. Washington, issued two years after Crawford, the Supreme Court
held that some statements that result from police interrogation are
nevertheless non-testimonial.  Davis v. Washington, 547 U.S. 813, 822
(2006).  The Court drew the line as follows:

Statements
are nontestimonial when made in the course of police interrogation under
circumstances objectively indicating that the primary purpose of the
interrogation is to enable police assistance to meet an ongoing emergency. 
They are testimonial when the circumstances objectively indicate that there is
no such ongoing emergency, and that the primary purpose of the interrogation is
to establish or prove past events potentially relevant to later criminal
prosecution.

 

Id. at 822.  Thus, we must determine
whether circumstances were present when Baez spoke with Castillo that would
objectively indicate the existence of an ongoing emergency.  See Vinson,
252 S.W.3d at 339.  In deciding this question, we review the totality of the
circumstances and may consider several non-exclusive factors, including:

(1)       whether the event was still ongoing;

(2)       whether the questions sought to determine what was presently
happening, as opposed to what had happened in the past;

(3)       whether the primary purpose of the questioning was to render aid,
and not simply memorialize a possible crime;








(4)       whether the questioning was conducted in an environment that
was tranquil and safe; and 

(5)       whether the events were deliberately retold in a step-by-step
fashion.

 

Id. (citing Davis, 547 U.S. at
827); Clark v. State, 282 S.W.3d 924, 931 (Tex. App.CBeaumont 2009, no pet. h.).

B.        Application to Baez=s Statements

In
applying these factors, we begin with a more detailed discussion of Castillo=s testimony about both statements. 
Castillo testified that he arrived at the scene of the burglary-in-progress
fewer than five minutes after receiving the dispatch.  There, he was met by a
sobbing Baez, whom he described as Avery frightened@ and hysterical, and who was still Aunder the stress@ of the crime that had just
occurred.  In her initial remarks, she informed Castillo that she had been
sleeping in her bedroom.  She awakened and saw appellant, who was wearing white
surgical gloves, partially entering her house through the bedroom window.  She
asked what he wanted and was told, Aa cigarette.@  She then fled from her house and
reported the ongoing crime.  This exchange is the first of two statements that,
according to the appellant, should be considered Atestimonial.@

Baez
also provided Castillo with a physical description of appellant, and indicated
that he was last seen running northbound.  Castillo passed that information to
surrounding law-enforcement units, who established a four-block dragnet in an
attempt to catch the suspect.  Because the burglar=s whereabouts were unknown, Castillo
then remained with Baez until appellant was apprehended.  Appellant, who
matched the suspect=s physical description, was detained in only seven or eight
minutes.  He was brought back to the scene of the crime where Baez, who was
still weeping, spontaneously exclaimed, AThat=s him.  That=s him.@  This identification of appellant is
the second of the objected-to statements.

1.         Initial Statements

Arguing
that Baez=s first statements were testimonial, appellant emphasizes the facts that
(1) the police had arrived and (2) the burglary suspect had fled the premises. 
Appellant concludes from those facts that Athe emergency, although recent, was
over.@  We disagree with that conclusion.








Castillo
arrived at the crime scene almost immediately after learning that a burglary
was in progress.  In hindsight, it appears that the burglary may have ended
shortly before he arrived.[6]  However, the
suspect had just fled and was still at large, and his whereabouts were
unknown.  Thus, although some of Baez=s statements dealt with events that
had recently occurred, Castillo was also interested in what was presently
happening, including the suspect=s physical description and location. 
Thus, the record reflects that the primary purpose of his questioning was not
to document a past crime, but instead to assess the situation, secure the crime
scene, decide on the size of the dragnet necessary to apprehend the suspect,
locate him,[7] and arrest
him in order to end the ongoing emergency situation.  See Davis, 547
U.S. at 829 (suggesting that Aquestions necessary to secure [officers=] safety or the safety of the
public@ would be non-testimonial) (emphasis added); Vinson, 252 S.W.3d at
339B40; Dixon v. State, 244 S.W.3d
472, 485 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d); Clark, 282 S.W.3d at 931B32; Rodriguez v. State, 274
S.W.3d 760, 765 (Tex. App.CSan Antonio 2008, no pet.).[8] 
Stated differently, the information solicited from Baez were necessary to
enable police to arrest the suspect and Aresolve the present emergency.@  See Davis, 547 U.S. at 827.

The fact
that the suspect was still loose carries particular significance here.  In Vinson,
the Court of Criminal Appeals held that, even though the alleged domestic
assault had ended by the time the police arrived at the crime scene, the Aemergency situation@ continued until the assailant had
been arrested and secured in a patrol car:

We agree
with the court of appeals that up to this point, before the appellant had
been secured in the patrol car, the trial court could rationally have
concluded that any interrogation was nontestimonial.  The trial court could
reasonably have found that [the police officer] was still assessing the
situation and that, until the appellant was secured, an emergency
situation was ongoing.

 

Vinson, 252 S.W.3d at 339B40 (emphases added); see also
Rodriguez, 274 S.W.3d at 765 (concluding that emergency existed until
suspect was detained by police); cf. Clark, 282 S.W.3d at 931 (holding
that statements were non-testimonial even though suspect was in custody,
because officer did not yet know if he had arrested the correct suspect).








We note
that Baez was questioned separately from the suspect and in an environment that
was relatively safe inasmuch as police officers were present.[9] 
However, we cannot say that the environment was Atranquil@ or that Baez provided a deliberate,
step-by-step statement such as that involved in Crawford.[10] 
See Davis, 547 U.S. at 827 (differentiating between the level of
formality involved in Crawford, in which statements were calmly uttered
in the station house, with that in Davis, involving Afrantic answers@ in a non-tranquil environment). 
Instead, the record shows that Baez=s statements were made at the scene
while the situation was still in progress, and while the speaker was hysterical
and under stress.  See Dixon, 244 S.W.3d at 484; Clark, 282
S.W.3d at 932; Rodriguez, 274 S.W.3d at 765.  Thus, Baez=s statements were neither Aofficial and formal in nature@ nor Asolemn declaration[s] made for the
purpose of establishing some fact.@  See Dixon, 244 S.W.3d at 485
(citing Crawford, 541 U.S. at 51).  Simply put, she was not acting as
a witness and did not offer A>a weaker substitute for live
testimony= at trial.@  See Davis, 547 U.S. at 828 (citation omitted).

Therefore,
we hold that Baez=s initial statements, in which she described the burglary and
provided a description of the suspect, were not testimonial.  Accordingly, the
Confrontation Clause did not bar their admission into evidence.

2.         Subsequent Identification

However,
we need not reach the same conclusion as to Baez=s later statements identifying
appellant as the burglar.  See Dixon, 244 S.W.3d at 486 (recognizing
that non-testimonial interrogation may later evolve into investigation
producing testimonial statements).  In some circumstances, statements
identifying a suspect may be non-testimonial if they assist police officers in
knowing whether they might encounter a violent felon.  See Davis, 547
U.S. at 827.  However, because appellant was already in custody at the time of
Baez=s identification, we cannot conclude
that her identification was necessary to ensure the officers= safety.  See id.  In
addition, the emergency situation may have ended once appellant was securely in
police custody.  See Vinson, 252 S.W.3d at 341B42; Rodriguez, 274 S.W.3d at
765; but see Clark, 282 S.W.3d at 931B32 (holding that emergency situation
persisted even after suspect was placed in custody, such that witness=s identification of suspect was
non-testimonial).  








In its
brief, the State emphasizes the fact that Baez=s identification was spontaneous and
did not result from police interrogation.  See Dixon, 244 S.W.3d at 482
(A[S]pontaneous statements to the
police are not testimonial[.]@); Spencer v. State, 162 S.W.3d 877, 882 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  However, the continued viability
of that rule may be at issue, following Davis:

Our holding refers to interrogations because . . . the statements in
the cases presently before us are the products of interrogations C which in some circumstances tend to generate
testimonial responses.  This is not to imply, however, that statements made
in the absence of any interrogation are necessarily nontestimonial.  The
Framers were no more willing to exempt from cross-examination volunteered
testimony or answers to open-ended questions than they were to exempt answers
to detailed interrogation. . . .  And of course even when interrogation exists,
it is in the final analysis the declarant=s
statements, not the interrogator=s
questions, that the Confrontation Clause requires us to evaluate.

 

Davis, 547 U.S. at 822 n.1 (emphasis
added).  However, we need not decide whether Baez=s spontaneous identification was
testimonial because, even if the statement was erroneously admitted, we
conclude beyond a reasonable doubt that its admission did not harm the
appellant.

                                                                            IV.

                                                             Harm Analysis








Assuming
without deciding that Baez=s identification was erroneously admitted, a finding of error
here would not necessitate that we reverse appellant=s conviction.  Instead, a violation
of a defendant=s right to confrontation is subject to harmless-error analysis.  Rubio
v. State, 241 S.W.3d 1, 3 (Tex. Crim. App. 2007).  Thus, even if the
admission of Baez=s identification was erroneous, we nevertheless will affirm
the conviction if we determine beyond a reasonable doubt that the alleged error
did not contribute to appellant=s punishment.  See Grant, 218 S.W.3d at 233; Tex. R.
App. P. 44.2(a).  In determining whether the admission of Baez=s testimonial statement was harmless
beyond a reasonable doubt, we consider:

(1)       the importance of the testimonial statement to the State=s case;

(2)       whether the testimonial statement was cumulative of other
evidence;

(3)       the presence or absence of evidence corroborating or
contradicting the testimonial statement on material points; and

(4)       the overall strength of the State=s case.

 

See Grant, 218 S.W.3d at 233.  

In
addition to those factors, we may also consider the source and nature of the
error, the extent of the State=s emphasis on the evidence, and the relative weight the jury
may have assigned to the evidence as compared with the balance of the remaining
evidence relevant to the issue of punishment.  See Scott v. State, 227
S.W.3d 670, 690 (Tex. Crim. App. 2007).  Finally, we may also consider any
other factor contained in the record that might shed light on the probable
impact of the evidence on the minds of average jurors.  Clay v. State,
240 S.W.3d 895, 904 (Tex. Crim. App. 2007). 

We are
not to simply decide whether the jury verdict enjoyed evidentiary support.  See
Scott, 227 S.W.3d at 690.  Instead, the question is whether the alleged
constitutional error was actually a contributing factor in the jury=s deliberations in arriving at a
verdict.  Id.  Thus, a Crawford error does not require reversal
unless there is a reasonable possibility that, within the context of the entire
trial, the perceived error Amoved the jury from a state of non-persuasion to one of
persuasion on a particular issue.@  Id.; Grant, 218
S.W.3d at 233.








After
reviewing these considerations, we are persuaded beyond a reasonable doubt that
the punishment assessed by the jury would have been the same even if the trial
court had not admitted Castillo=s testimony about Baez=s identification of appellant in the
collateral crime.  See Clay, 240 S.W.3d at 905.  Her identification was
corroborated by, and merely cumulative of, other evidence linking appellant to
the burglary of Baez=s home.  First, Gallegos identified appellant as the person
taken into custody, and further confirmed that appellant matched the physical
description of the burglary suspect.  Second, appellant was carrying a backpack
containing tools commonly used to burglarize homes and restrain the occupants,
including white latex gloves like those worn by the suspect who broke into Baez=s house.  Thus, the mere fact that
Baez confirmed appellant=s identity to Castillo C a statement that was not emphasized
by the State during closing argument C was not important to the State=s case on punishment.

Instead,
the State heavily emphasized the complainant=s testimony, which the jury heard
only one day before deciding appellant=s punishment, about the horrific and
humiliating nature of the violent assault committed against her in the presence
of her 3-year-old son:

[Appellant]
went into [the complainant=s] house and
broke in.  Tore open the backdoor.  He broke into her house and he grabbed a
knife and he put a knife to her throat.  After he put a knife to her throat he
tore her . . . pants off.  After he tore her pants, he stuck his hand [in] and
started playing with her vagina.

He then pulled her shirt [off] and started sucking on her breasts.
[She] gives him jewelry, a crucifix, a necklace with the Virgin Mary all in
front of her three year old who watched this.  Who watched mom getting sexually
assaulted in their own bathroom in the middle of the day.

 

The complainant=s graphic testimony was further
corroborated in large part by appellant=s written confession, in which
appellant admitted that his actions Aterrified@ the complainant.








In
response to the State=s argument on punishment, the defense suggested that, in
burglarizing the complainant=s home, appellant simply Alost [his] clarity@ and committed a crime of
opportunity.  However, that contention was negated by the uncontested,
unobjected-to evidence from Officer Gallegos that, on yet another occasion,
appellant burglarized the home of a different woman, Baez, while carrying
deadly weapons and tools, such as duct tape and tie-downs, that could be used
to restrain her.[11]  Thus, the
overall strength of the State=s case for punishment was very strong, and Baez=s identification of appellant Aestablished little, if anything,
negative about appellant that was not also well established by the properly
admitted evidence.@  See Clay, 240 S.W.3d at 905B06.  Accordingly, the record
indicates that the jury probably assigned very little weight, if any, to Baez=s identification of appellant when
compared with the overwhelming evidence relative to punishment.  See Scott,
227 S.W.3d at 690.








Finally,
we consider one more factor that might shed light on the probable impact of
Baez=s statement of identification on the
minds of the jury.  See Clay, 240 S.W.3d at 904.  Here, despite hearing
evidence of (1) one graphic assault against one woman in front of her child,
(2) another burglary allegedly committed against Baez, and (3) appellant=s stipulation to a previous
conviction for theft, the jury C which had to assess appellant=s punishment at confinement for at
least five years and as many as ninety-nine years[12]
C sentenced him to only fifteen years= imprisonment.  See Higginbotham
v. State, 807 S.W.2d 732, 737 (Tex. Crim. App. 1991) (considering severity
of punishment in harm analysis); Washington v. State, 668 S.W.2d 715,
719 (Tex. App.CHouston [14th Dist.] 1983, pet. ref=d); Ivey v. State, 250 S.W.3d
121, 126 (Tex. App.CAustin 2008), aff=d, 277 S.W.3d 43 (Tex. Crim. App. 2009); Johnson v.
State, 83 S.W.3d 229, 233 (Tex. App.CWaco 2002, pet. ref=d); Menefee v. State, 928
S.W.2d 274, 281B82 (Tex. App.CTyler 1996, no pet.).  Thus, we cannot conclude that the
admission of Baez=s identification, even if erroneous, increased the severity
of punishment assessed by the jury.

After
considering all of the harmless-error factors, we find no reasonable probability
that the trial court=s alleged Crawford error Amoved the jury from a state of
non-persuasion to one of persuasion@ on the issue of appellant=s punishment.  See Grant, 218
S.W.3d at 233.  Therefore, we hold that the admitted evidence was harmless.

Accordingly,
we overrule appellant=s second issue.

Conclusion

Finding
no merit in the issues presented, we affirm the judgment of the trial court.

 

 

 

/s/      Kent C. Sullivan

Justice

 

Panel consists of Justices Yates,
Guzman, and Sullivan.

 

Publish C Tex.
R. App. P. 47.2(b).

 

 









[1]           See Tex. R. App. P. 38.7.





[2]           See Scott v. State, 227 S.W.3d 670,
690 (Tex. Crim. App. 2007); Grant v. State, 218 S.W.3d 225, 233 (Tex.
App.CHouston [14th Dist.] 2007, pet. ref=d).





[3]           The record indicates that English is not
the complainant=s native language, and appellant later confessed that
she did not appear to understand his attempts at spoken communication.





[4]           Appellant neither acknowledged nor denied
some of the complainant=s specific factual allegations, and his version of the
facts is not inconsistent with the complainant=s testimony or the facts she initially reported to the police.





[5]           A[T]he
Confrontation Clause does apply during the punishment phase [of criminal
trials].@  Dixon v. State, 244 S.W.3d 472, 482 (Tex.
App.CHouston [14th Dist.] 2007, pet. ref=d).





[6]           The record does not specifically reflect
how much overall time passed between Baez=s
report of the crime and the police officers=
arrival at the scene.  We note that appellant was apprehended only four blocks
away from the crime scene, suggesting a minimal amount of time had passed after
he fled Baez=s house.  In addition, appellant concedes in his brief
that, when Baez first spoke to Castillo, the emergency was Arecent.@





[7]           See, e.g., Pritchard v. State, No.
2-08-137-CR, 2009 WL 112717, at *2 (Tex. App.CFort Worth Jan. 15, 2009, pet. filed) (mem. op., not designated for
publication) (deciding that an Aongoing
emergency@ existed because the whereabouts of the suspect and
one of the victims was unknown).





[8]           We have previously held that A[s]tatements made to officers responding to a call
during the initial assessment and securing of a crime scene are not
testimonial.@  Hudson v. State, 179 S.W.3d 731, 737 (Tex.
App.CHouston [14th Dist.] 2005, no pet.); Dixon, 244
S.W.3d at 482.  The Davis Court rejected a per se rule for a
police officer=s initial inquiries but indicated that, because
officers Aneed to know whom they are dealing with in order to
assess the situation,@ such initial inquiries will often produce
non-testimonial statements.  See Davis, 547 U.S. at 832 (citation
omitted).





[9]           Notably, even after broadcasting the
physical description of the suspect, Castillo remained at Baez=s side until after appellant was arrested.





[10]         Castillo, summarizing Baez=s statements in his testimony to the jury, provided a
step-by-step retelling of her comments.  However, the record does not reflect
that her statements, which were uttered while she was said to be Ahysterical,@
were deliberately and thoughtfully conveyed to him in such an organized
fashion.





[11]         In his brief, appellant does not separately
analyze or parse the alleged harm that may have resulted solely from Baez=s identification of him.  Instead, he claims globally
that ACastillo=s
testimony about Baez= [sic] statements was the only evidence
presented to the jury showing the commission of this extraneous offense.@  However, that statement is not supported by the
record.  With the exception of her statement that appellant was actually wearing
the white latex gloves during the burglary, all of Baez=s material statements were cumulative of Gallegos=s testimony, to which appellant lodged no objection. 
That is, Gallegos testified that (1) he responded to a police dispatch of a
burglary-in-progress, (2) appellant matched the physical description of the
burglary suspect, and (3) appellant was carrying tools commonly used in home
burglaries, including white latex gloves.





[12]         See Tex. Penal Code Ann. ' 12.32(a).