**Affirmed and Opinion Filed April 24, 2024**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00872-CR

**MARK ELLIOT JONES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-82412-2022**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Partida-Kipness

A jury convicted appellant Mark Elliot Jones of continuous sexual abuse of a child younger than fourteen. *See* TEX. PENAL CODE § 21.02. The trial court assessed punishment at thirty-five years' confinement. In this appeal, Jones argues he is entitled to a new trial because of erroneous evidentiary rulings, charge error, and cumulative error. We overrule his appellate issues and affirm the trial court's judgment.

## BACKGROUND

Jones was indicted for and convicted of sexually abusing his biological daughter, E.J.,[1] from the time she was seven years old until she was fourteen. The underlying facts are known to the parties. Because appellant has not challenged the sufficiency of the evidence, we provide only a brief recitation of the underlying facts and include additional facts necessary for disposition of the appeal in the discussion sections below. *See Zamarron v. State*, No. 05-19-00632-CR, 2020 WL 6280869, at *1 (Tex. App.—Dallas Oct. 27, 2020, pet. ref'd) (mem. op., not designated for publication) (citing TEX. R. APP. P. 47.1).

E.J. is the oldest child of the marriage between Jones and E.J.'s mother (Mother). E.J. was born in March 2005 and was seventeen at the time of trial. She has two younger brothers, S.J. and G.J., who are one and three years younger than E.J. respectively. Jones and Mother separated in 2010 when E.J. was five years old. They divorced a year later. Beginning with the separation and following the divorce, E.J. and her brothers split their time fifty-fifty between their parents' homes. The visitation schedule consisted of the children spending five days with Mother, then five days with Jones, then two days with Mother, and then two days with Jones. Under this schedule, the children spent at least fourteen days with each parent during

---

[1] We refer to the complainant, E.J., and her brothers, S.J. and G.J., by initials to protect their identities. TEX. R. APP. P. 9.8(a).

–2–

a given month. Between 2012 and 2015, Mother and Jones each lived in Plano, Texas. Jones and Mother each moved to McKinney, Texas in 2015.

E.J. testified that Jones began sexually abusing her when she was seven or eight years old. At that time, Jones lived in an apartment in Plano, where she shared a bedroom with her two younger brothers. Her brothers slept in a bunk bed, and she slept in a twin bed. E.J. remembered Jones inappropriately touched her bottom at bedtime "pretty often" at the Plano apartment while her brothers were asleep in their beds. The touching occurred during Jones's bedtime routine with the children; he would come into the children's room, talk to each child and pray for them individually, and then say goodnight. While Jones was talking to E.J. at bedtime, he would put his hands inside the bottom of her pajama shorts and then move his hands to her bottom and "kind of shak[e] and squeeze[e]." E.J. said the touching happened "pretty often" and felt "odd." They would continue talking as if nothing was happening, and Jones would stop touching her when the conversation ended.

When E.J. was nine or ten years old, Jones moved to a house in McKinney, and E.J. had her own bedroom. At the McKinney house, Jones continued the same bedtime routine; going to the boys' room first and then to E.J.'s room. Jones would close E.J.'s door when he came to say goodnight and then, like at the apartment, he would touch her bottom while they talked.

When E.J. was eleven years old, Jones's abuse escalated. On four or five occasions Jones exposed his penis to E.J. during the bedtime routine and asked her

to "itch it" for him. Around the same time, Jones began taking off her clothes during the bedtime routine and massaging her body. During the massage, Jones would pull E.J.'s underwear down and rub her vagina[2] with his hand. According to E.J., this happened "[f]our, five times a week for multiple years," including when she was twelve and thirteen years old.

E.J. also testified that when she was twelve years old, Jones began touching her in different ways during the bedtime routine, including kissing and licking her breasts and penetrating her vagina with his finger. According to E.J., the penetration occurred "pretty regularly" during the bedtime routine beginning when she was twelve. According to E.J., the sexual contact always happened in her bedroom at bedtime, and Jones usually engaged in the same acts each time. When the abuse occurred, E.J. was naked in her bed, and Jones, wearing only boxer shorts, would sit on top of her and straddle her lower legs while he touched her. E.J. described in detail what sounds Jones made and how moved his body, hand, and finger when he was touching her. She testified that when she stayed at Jones's house for several days in a row, the abuse happened at least once during each visit for a period of at least three years.

E.J. did not realize until she was in eighth grade that what Jones was doing to her was not normal. In one of her eighth-grade classes, they had a lesson on sexual

---

[2] E.J. testified that she referred to her female private part as her vagina.

abuse. That is where she realized what her dad was doing to her was sexual abuse. She was thirteen years old at the time. Once E.J. realized she was being sexually abused, she was afraid to come forward. She told the jury she "was very scared to say anything because that's when I found out it wasn't normal. And I didn't know what the repercussions of saying something would be." E.J. waited almost a year to tell someone even though Jones continued the abuse during that time.

The first person she told was her brother, S.J. She was fourteen at the time. She decided to tell S.J. because she was worried the abuse would get worse and eventually lead to Jones raping her. She told S.J. while they were on a walk in her dad's neighborhood during one of their visits, but she did not tell S.J. "any details." E.J. described S.J.'s reaction to her information as "very surprised" and then "mostly angry" followed by sadness. His reaction caused E.J. to have second thoughts about speaking up.

E.J. told Mother about the abuse a day or two after she told S.J. She chose to tell Mother about the abuse through a written letter rather than a verbal discussion. She chose to write a letter because she "was scared of my mom's reaction and scared to talk about it in general" and was also scared of "my dad's reaction if he found out." The letter, dated June 3, 2019, was addressed to God because E.J. wrote it at Jones's house and "knew that if he saw it and he knew that I was planning to give it to my mom he might do something." She addressed some of her journal entries to God at that time, so this was not unusual for her. The letter was five pages long. E.J.

did not mention anything about Jones until the third page because she wanted "to conceal that part of the letter as much as possible in case it was read by him." Also, she was "vague" in the letter about what Jones had been doing to her.

At trial, the letter was admitted into evidence over a hearsay objection and published to the jury. During her testimony, E.J. read the following excerpt from page three of the letter:

> (E.J. reading) "Please help me to have a better relationship with my whole family, especially Dad. I am so bitter towards him because he loves us so much but most of the time I just want to run away, especially when inappropriate things happen."
>
> And it says in parentheses, "I don't think I should put all of the perverted details into writing, but, God, please help me build up the courage to tell Mom. I am so scared to share this secret that I have been hiding for so long. At first I thought it was normal, but as I got older, it got worse. If I tell Mom I don't know what will happen. Court, war, a never ending hell on earth, but at the same time, I know this isn't healthy.
>
> I don't think I should have told [S.J.] about this. It has strained his relationship with Dad and I feel so guilty for it. Please help me escape."

E.J. did not reference Jones's behavior anywhere else in the letter. E.J. felt very relieved writing the letter and telling someone what was happening. She testified that her eighth-grade year "was probably the hardest year of my life" after realizing what was happening was wrong but still keeping it to herself.

E.J. and Mother testified that E.J. gave the letter to Mother in June 2019 when E.J. was fourteen years old. E.J. asked Mother to read it while E.J. was at soccer practice because E.J. did not want to see her Mother's reaction as Mother read the

letter. After reading the letter, Mother asked E.J. several questions. After E.J. "shared some things that had happened at [Jones's] house," Mother called the police. The police came to Mother's home that evening, and E.J. was interviewed at the child advocacy center a couple of days later. E.J. testified she was nervous during the first interview, so she could not remember everything she said there. She went in for a second interview about a month later after telling Mother she "wanted some more closure and just to go and maybe say some other things that I wanted to say."

Rachel McConnell conducted the forensic interviews of E.J. on June 6, 2019, and July 16, 2019. Forensic interviewer Eligio Molina testified for the State about the interviews. Although he did not conduct E.J.'s interviews, he reviewed both of her interviews in preparation for trial. According to Molina, E.J. was consistent between the two interviews. She was clear about the different acts she was talking about and used age-appropriate language when talking about and describing them. Molina told the jury he "noticed there were general details, sensory details. She was able to provide a chronological order. She was able to stay consistent with the interview. And as far as my observation of the interview itself, there weren't any red flags." Molina also concluded there were no signs of vindictiveness or exaggeration.

Sergeant Zachary Craven of the McKinney Police Department was assigned to the case a day or two after it was reported. He also testified for the State. He told the jury he watched E.J.'s forensic interview on closed-circuit television from a separate room, and E.J. was able to articulate the offense. After the interview,

Sergeant Craven spoke with Mother and had E.J.'s brothers forensically interviewed. He arrested Jones the same day as the forensic interview and charged him with continuous sexual assault of a young child. The following day, Sergeant Craven executed a search warrant on Jones's home.

The State indicted Jones. He pleaded not guilty and the case proceeded to trial. Following a two-day jury trial, the jury found Jones guilty of the offense of continuous sexual abuse of a child as charged in the indictment. The punishment phase of the proceeding was to the bench. The trial court sentenced Jones to thirty-five years confinement. This appeal followed.

## ANALYSIS

In five issues, Jones challenges the admission of three statements he contends constitute inadmissible hearsay, complains of charge error, and maintains he is entitled to a new trial because of cumulative error. We will address each issue in turn.

### I. Admission of Evidence

In his first three issues, Jones complains the trial court abused its discretion by admitting certain statements of E.J. and her brother, S.J. Jones maintains the statements were inadmissible hearsay.

We review a trial court's decision on the admission or exclusion of evidence under the deferential abuse of discretion standard. *Rubis v. State*, 666 S.W.3d 837, 840 (Tex. App.—Dallas 2023, no pet.) (citing *Tienda v. State*, 358 S.W.3d 633, 638

(Tex. Crim. App. 2012)). If the trial court's ruling is "within the zone of reasonable disagreement," a reviewing court should not interfere. *Tienda*, 358 S.W.3d at 638; *Rodriguez v. State*, No. 05-22-00273-CR, 2023 WL 3881114, at \*2 (Tex. App.—Dallas June 8, 2023, no pet.) (mem. op., not designated for publication).

Improper admission of evidence is non-constitutional error that an appellate court disregards unless the error affects appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Garcia v. State*, 126 S.W.3d 921, 925, 927 (Tex. Crim. App. 2004). Under Rule 44.2, an appellate court may not reverse for non-constitutional error if, after examining the record as a whole, it has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Garcia*, 126 S.W.3d at 927. Moreover, "[e]rroneously admitted evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" *Mays v. State*, No. 05-13–00086-CR, 2014 WL 3058462, at \*2 (Tex. App.—Dallas July 8, 2014, no pet.) (mem. op., not designated for publication); *see Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023); *Lane v. State*, 151 S.W.3d 188, 192–93 (Tex. Crim. App. 2004). In other words, error in the admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection. *Mays*, 2014 WL 3058462, at \*2.

We will assume here, without deciding, that the trial court erred in overruling Jones's hearsay objections to the testimony challenged on appeal. As discussed

below, however, we conclude any purported error was harmless and overrule Jones's first three issues.

### A. Mother's testimony

Jones first complains of Mother's testimony concerning certain statements in E.J.'s letter and the events surrounding Mother reading the letter and later calling the police. Jones objected to multiple questions asked by the State. Some of those objections were sustained, and others were overruled. In his appellate brief, Jones cites five pages of testimony and does not clearly identify which specific statements caused him harm by their admission. The following excerpts from the testimony cited by Jones encompass the objections overruled by the trial court and the context of the examination leading to the testimony he appears to complain of on appeal:

Q. What were you thinking while you were reading the letter?

A. It was a sweet letter to God and I was thinking --

> MR. WALPOLE: Objection, Your Honor, at this point we're referring to a document not in evidence and hearsay.

> THE COURT: Overruled.

> Q. (BY MS. WOODALL) What were you thinking?

A. I was thinking I was proud to be her mom. It was a sweet letter about life. And there was just a sentence in there that I knew she was referring to when she had said earlier, I need to tell you something --

> MR. WALPOLE: Object to hearsay, Your Honor.

> MS. WOODALL: Judge, she's not saying what was in there.

> THE COURT: Overruled.

A. So there was one sentence that said pray – I pray you give me the strength to tell you the grievous things that are happening at Dad's --

MR. WALPOLE: Judge, I object to hearsay.

THE COURT: Sustained.

MR. WALPOLE: Ask the jury [to] be instructed to disregard the witness's answer.

THE COURT: I'm going to instruct you to disregard the portion at the end about any statements that the child made about Dad's house.

When the examination continued, Mother explained the letter to God was three or four pages long and, after reading it, she did not suspect there was sexual abuse going on at Jones's house. The State then asked a series of questions concerning E.J.'s demeanor when she returned to the car after soccer practice and Mother's understanding of what E.J. was telling her:

Q. (BY MS. WOODALL) What did you understand what she was telling you?

MR. WALPOLE: Objection to an answer based on hearsay, Your Honor.

THE COURT: Overruled.

A. [E.J.'s] demeanor was still relieved. She was in wonderment about what I thought about the letter. And I just started asking questions.

Q. (BY MS. WOODALL) Based on those questions, what did you end up doing next?

A. Based on my questions to her and her answers, I called first my husband and said I think we need to call the police.

Q. What was it about what she said that made you call the police?

–11–

MR. WALPOLE: Objection, Your Honor, to the extent the answer calls for hearsay.

MS. WOODALL: It's not offered for the truth of the matter asserted, Judge. It's being offered for what she does next and the effect on the listener, why she calls the police.

THE COURT: Overruled.

A. She had shared some things that had happened at his house that weekend and I didn't like it, and she said if I tell you more, do you promise I don't have to go back there anymore. And I said, I don't know but I know we need to get other people involved. And so we got home and called the police.

Jones contends Mother's testimony bolstered E.J.'s testimony and constitutes harmful error. We disagree.

Bolstering occurs when the testimony's sole purpose is to enhance the credibility of another witness, without adding anything to the proof of a relevant fact. *Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) (bolstering is "any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'") (quoting TEX. R. EVID. 401). "[E]vidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally further tendency to establish a fact of consequence, should not be considered 'bolstering.'" *Id.* at 820. "Thus, if the evidence makes any substantive contribution, if it even incrementally tends to further establish a fact of consequence,

–12–

it is not bolstering." *Davidson v. State*, No. 05-05-00864-CR, 2006 WL 3020403, at *2 (Tex. App.—Dallas Oct. 25, 2006, pet. ref'd) (mem. op., not designated for publication).

Here, the State did not offer Mother's testimony to enhance E.J.'s credibility. Rather, the State offered the testimony to explain why Mother called the police after she read the letter and talked with E.J. about the letter. Mother's testimony, thus, made its own substantive contribution to the timeline. Moreover, E.J. testified Mother was "very distraught" after reading the letter. E.J. talked to Mother after she read the letter, Mother asked her a couple of questions and, after E.J. answered those questions, E.J. believes Mother understood what had been happening to her. E.J. confirmed her Mother called the police after that, and the police came to the house that same night. Jones did not object to E.J.'s testimony. At most, Mother corroborated E.J.'s testimony regarding her disclosure to Mother and the timeline of subsequent events. We, therefore, conclude the testimony was not bolstering.

Further, Jones used Mother's testimony to support his theory that E.J. fabricated the abuse allegations because she no longer wanted to stay at Jones's home. For example, while cross-examining Mother, Jones's counsel questioned her about the disclosure of abuse and implied E.J. fabricated the abuse so Mother would agree E.J. did not have to stay at Jones's home:

> Q. There were other complaints. You said that she didn't quite like the way things were going over there when she was about 13?
>
> A. Yes.

–13–

Q. But whatever she told you about what she didn't like going on -- and none of it raised an alarm to you that one of those things was [sic] sexual abuse?

A. Not at that point in time.

Q. I just -- I don't like going over there?

A. She gave many other excuses that weren't sexually charged. But there were a lot of excuses that she didn't like going over there. You're right.

Q. Well, excuses is one way to put it. The other way to put it is she was talking about the things that -- reasons that she didn't like being there, correct?

A. Correct.

Q. And she doesn't just have to go over there, you know, a couple times a month for the weekend. She's living there 50 percent of the time?

A. Correct.

***

Q. And not only did her talking about the – you said long list of complaints with being over at the house with the boys. Even when she wrote this letter, there still wasn't anything in the letter that caused you to believe -- conclude that there was sexual abuse going on, or at least that's what you told the jury?

A. Correct.

Q. And then she does start talking because you're asking questions?

A. True.

Q. She says I'm not going to tell you more unless you promise me I don't have to go over there anymore?

A. That's true.

Q. So if she was trying to manipulate her environment and just didn't want to be stuck in a house full of boys 50 percent of the time, you'd agree that she successfully accomplished that goal?

–14–

A. If that were her goal, she is not seeing him anymore.

Similarly, during closing argument, Jones's counsel argued E.J. fabricated the abuse allegations because Mother had rejected E.J.'s previous attempts to avoid staying with Jones during his periods of possession:

> Girl's becoming teenager. But, you know, she's -- I don't want to go to Dad's, I don't want to go to Dad's, I don't want to go to Dad's. You have to go to Dad's, you have to go to Dad's, you have to go to Dad's. He sexually assaulted me. You don't have to go to Dad's anymore.

The implication being that E.J. made up the abuse because she knew Mother needed a substantial reason—something other than E.J.'s prior excuses—to allow E.J. to avoid staying at Jones's home.

Error in the admission of evidence may be rendered harmless when "substantially the same evidence" is admitted elsewhere without objection. *Johnson v. State*, No. 05-22-00294-CR, 2024 WL 1045924, at \*6 (Tex. App.—Dallas Mar. 11, 2024, no pet. h.) (mem. op., not designated for publication) (citing *Mays*, 2014 WL 3058462, at \*2). Thus, by cross-examining Mother on the same issue the complained-of evidence pertained to (i.e., the impact of E.J.'s answers to Mother's questions after reading the letter), and by failing to object to E.J.'s testimony on the same issues, defense counsel rendered any error in admitting Mother's prior testimony harmless. *See id.*; *see also Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991) (any error was rendered harmless by the admission of the same evidence elsewhere.).

After examining the record as a whole, we have fair assurance the complained-of testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Garcia*, 126 S.W.3d at 927; *see also Borque v. State*, 156 S.W.3d 675, 676–77 (Tex. App.—Dallas 2005, pet. ref'd) (concluding any error in admission of counselor's hearsay testimony of abuse harmless based on child's explicit and detailed testimony of abuse). Assuming without deciding the trial court erred when it admitted the complained of testimony, we conclude any purported error was not harmful. We overrule Jones's first issue.

## B.    S.J.'s testimony

Next, Jones contends the trial court abused its discretion by allowing Sergeant Craven to testify during the State's redirect examination that S.J. made the following statement in his forensic interview:

> [E.J.] told [S.J.] that his – her dad made her uncomfortable and she wanted to stay in their bedroom to stay away from him.

Jones maintains this testimony constitutes inadmissible hearsay, and its admission caused him fundamental harm and violated the Confrontation Clause of the Sixth Amendment. In response, the State argues the testimony was admissible under a hearsay exception and did not violate Jones's right to confront witnesses.

The State cites the rule of optional completeness to support admission of the testimony. *See* TEX. R. EVID. 107. Rule 107 permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Walters v. State*, 247 S.W.3d 204, 218

–16–

(Tex. Crim. App. 2007) (citing *Parr v. State*, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977) (stating "[i]t is well established that the evidence which is used to fully explain a matter opened up by the other party need not be ordinarily admissible" under the common-law doctrine of optional completeness)). "It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Id.* (citing *Cerda v.* State, 557 S.W.2d 954, 957 (Tex. Crim. App. 1977)).

Here, when Jones's counsel cross-examined Sergeant Craven, counsel elicited testimony from him regarding statements E.J.'s brothers told the forensic interviewer; namely, that the brothers did not know "anything" about the abuse. This left the jury with the impression the brothers provided no information about the alleged abuse. The challenged testimony was made on redirect examination in response to the State asking Sergeant Craven the following: "Specifically, what was the thing that he said that was helpful to you in your investigation." The State, therefore, elicited the testimony to counter the false impression created by Jones's cross-examination of Sergeant Craven. We conclude the trial court did not abuse its discretion by overruling the hearsay objection to Sergeant Craven's testimony.

We further conclude there was no violation of the Confrontation Clause. The Confrontation Clause of the Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI. The Confrontation Clause is made

–17–

applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965). The principal concern of the Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Even when a statement offered against a defendant is admissible under evidentiary rules, the statement may implicate the Sixth Amendment's Confrontation Clause. *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1024 (2006); *see also Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (holding that a statement admissible as an excited utterance could still constitute a testimonial statement for purposes of a Confrontation Clause analysis).

The Confrontation Clause bars the admission of testimonial statements of a witness who does not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *Allison v. State*, 666 S.W.3d 750, 762 (Tex. Crim. App. 2023). The threshold question in any confrontation clause analysis is whether the statements at issue are testimonial or nontestimonial in nature. *Id.* A statement is "testimonial" when circumstances objectively indicate it was made for the primary purpose of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Forensic interview statements have been held to be testimonial and

–18–

inadmissible unless the child testifies at trial or the defendant had a prior opportunity for cross-examination. *See Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011). We assume without deciding that Sergeant Craven's testimony violated the Confrontation Clause. However, any purported error was harmless.

### 1. Standard of review

We review constitutional error in the admission of testimonial statements in violation of the Confrontation Clause under the standard specified in Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Allison*, 666 S.W.3d at 763 (first citing *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007), and then citing TEX. R. APP. P. 44.2(a)). Constitutional error in a criminal case requires reversal of the judgment "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).[3]

The following factors are relevant to our analysis: (1) the importance of the out-of-court statement to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the State's case. *Allison*, 666 S.W.3d at 763–64 (citing *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007)). The emphasis of the harm analysis under

---

[3] "Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

Rule 44.2(a) is not on the propriety of the outcome of the trial. *Id.* at 764. "In other words, the question is not whether the jury's verdict was supported by evidence, but whether it is likely that the constitutional error was actually a contributing factor in the jury's deliberations." *Id.* "That is, whether the error adversely affected the integrity of the process that led to the conviction." *Id.*

In analyzing harm, we may also consider the source and nature of the error, the extent, if any, the error was emphasized by the State, and how much weight the jury might have placed on the erroneously admitted evidence compared to the remainder of the evidence as to the relevant element or defensive issue. *Id.* We must ask whether there is a reasonable possibility the error moved the jury from a state of non-persuasion to one of persuasion on a particular issue. *Id.* Ultimately, we must be satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction to conclude that the error was harmless and affirm. *Id.* (citing *Scott*, 227 S.W.3d at 690); *Clark v. State*, 282 S.W.3d 924, 930–31 (Tex. App.—Beaumont 2009, pet. ref'd).

### 2. Harm analysis

Excluding Sergeant Craven's testimony, the State had a strong case against Jones based on E.J.'s testimony and the detailed descriptions of the abuse committed against her by Jones. This evidence weighs heavily against a conclusion Jones was harmed by Sergeant Craven's testimony that S.J. admitted his sister told him that she wanted to sleep in her brothers' room because Jones made her uncomfortable.

–20–

Moreover, this testimony provides little if any evidentiary value because its does not mention the abuse allegations. The testimony does not make it more or less probable that abuse occurred. At most, it corroborates E.J.'s testimony that she told S.J. what was happening without giving him "any details."

Based on the foregoing, we are confident the verdict was not attributable to Sergeant Craven's recitation of S.J.'s statement. After carefully reviewing the record, we hold that any error in the admission of that testimony did not contribute to Jones's conviction or punishment and was harmless beyond a reasonable doubt. *See* TEX. R. APP. 44.2(a); *see also Allison*, 666 S.W.3d at 764, 765. As such, admitting the testimony did not violate Jones's Sixth Amendment right to confrontation. We overrule Jones's second issue.

## C. E.J.'s letter

In his third issue, Jones contends the trial court abused its discretion by admitting E.J.'s letter into evidence. He maintains the letter constituted inadmissible hearsay, and its admission was harmful because it bolstered E.J.'s testimony. The State argues any error was unpreserved because the letter contained some admissible evidence, and Jones's global hearsay objection failed to specify objectionable portions of the letter. Assuming without deciding error occurred and was preserved, we conclude any purported error was harmless.

The erroneous admission of evidence is not reversible error when substantially similar testimony comes in elsewhere without objection. *Cook v. State*,

–21–

665 S.W.3d at 600. Here, Jones complains of the portion of the letter in which E.J. mentions Jones. E.J., however, read that portion of the letter to the jury without objection from Jones. E.J. also testified as to why she wrote the letter, and why she only vaguely described the abuse in the letter. Jones did not object to that testimony and did not object to E.J.'s detailed testimony describing the many instances of his sexual abuse.

After examining the record as a whole, we are assured any error in admission of the complained-of testimony did not have a substantial and injurious effect or influence in determining the jury's verdict. *See* TEX. R. APP. P. 44.2(b); *see also Garcia*, 126 S.W.3d at 927. Accordingly, we conclude even if the trial court erred when it admitted the letter, the error was harmless. *See Cook*, 665 S.W.3d at 600 (error harmless where substantially similar testimony was allowed without objection and the jury heard the complainant's detailed account of the sexual assault); *see also Bellard v. State*, No. 05-21-00633-CR, 2023 WL 1097769, at *9 (Tex. App.—Dallas Jan. 30, 2023 pet. ref'd) (mem. op., not designated for publication) (concluding error, if any, in admitting evidence was harmless because substantially the same evidence was admitted elsewhere without objection). We overrule Jones's third issue.

## II.     Charge Error

In his fourth issue, Jones contends the jury charge included an erroneous application paragraph, which allowed the jury to find him guilty without finding he

committed two or more acts of sexual abuse more than thirty days apart. The State maintains the charge accurately tracked the language of the statute and, even if the trial court erred, Jones was not egregiously harmed.

### A. Standard of review

We review alleged jury charge error in a two-step analysis. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). First, we determine if the charge is erroneous. *Id.* If error exists, we must then decide whether appellant was harmed by the erroneous charge. *Id.*; *see also Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If no error exists, the review ends there and no harm analysis is necessary. *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009); *Henderson v. State*, No. 05-19-00372-CR, 2021 WL 423167, at *3 (Tex. App.—Dallas Feb. 8, 2021, no pet.) (mem. op., not designated for publication) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).

### B. Applicable law

"[T]he jury is the exclusive judge of the facts," but the trial court has a duty to submit a written charge to the jury "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. arts. 36.13, 36.14. The charge is meant to inform the jury of the applicable law and how to apply it to the facts of the case. *Alcoser*, 663 S.W.3d at 165–66; *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

Abstract paragraphs "serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge," and application paragraphs apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Alcoser*, 663 S.W.3d at 166 (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). It is the application paragraph of the charge, not the abstract portion, that authorizes a conviction. *Crenshaw*, 378 S.W.3d at 466. "Because that paragraph specifies the factual circumstances under which the jury should convict or acquit, it is the 'heart and soul' of the jury charge." *Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012). A charge is erroneous when it fails to apply the law to the facts presented at trial:

> It is not enough for the charge to merely incorporate the allegation in the charging instrument. Instead, it must also apply the law to the facts adduced at trial. This is because "[t]he jury must be instructed 'under what circumstances they should convict, or under what circumstances they should acquit.'"

*Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004) (quoting *Ex parte Chandler*, 719 S.W.2d 602, 606 (Tex. Crim. App. 1986)).

## C. Error analysis

A jury charge is fundamentally defective if it omits an essential element of the offense or authorizes conviction on a set of facts that do not constitute an offense. *McKinney v. State*, No. 05-14-01350-CR, 2016 WL 3963369, at *15 (Tex. App.—Dallas July 18, 2016, pet. ref'd) (citing *Zuckerman v. State*, 591 S.W.2d 495, 496

(Tex. Crim. App. 1979)). A person commits the offense of continuous sexual abuse of a young child if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

>> (A) a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

TEX. PENAL CODE §§ 21.02(b)(1)–(2)(A). According to the Texas Court of Criminal Appeals, the language of section 21.02 reflects the Legislature's intent:

> The statutory language reflects that the Legislature intended to permit one conviction for continuous sexual abuse based on the repeated acts of sexual abuse that occur over an extended period of time against a single complainant, even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence, *so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration*.

*Price v. State*, 434 S.W.3d 601, 605-06 (Tex. Crim. App. 2014) (emphasis added in original). *Lewis v. State*, No. 14-21-00691-CR, – S.W.3d –, 2023 WL 4873306, at *7 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, pet. ref'd) (quoting *Price*).

The jury charge at issue here tracked the statutory language verbatim in both the abstract portions[4] of the charge and the application paragraph. Jones only challenges the application paragraph, which stated in relevant part:

---

[4] The abstract portion of the charge defined the charged offense as follows:

> Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of April, 2012 through the 29th day of March, 2019, in Collin County, Texas, the defendant, MARK ELLIOT JONES, did then and there, ***during a period that was 30 days or more in duration***, commit two or more acts of sexual abuse against [E.J.], said acts of sexual abuse having been violations of one or more of the following penal laws, . . . .

(emphasis added). Jones contends the phrase "during a period that is 30 or more days in duration" is erroneous because it is unclear whether the phrase modifies the time period alleged in the indictment (i.e., April 1, 2012 through May 29, 2019), or modifies the commitment of two or more acts of sexual abuse. According to Jones, that language was sufficiently confusing to cause charge error because it could be interpreted to allow the jury to convict him by finding two or more acts of abuse that occurred "at any time over a period that was more than 30 days of duration, regardless of whether the acts themselves were separated by the time period required by statute." We disagree.

Other intermediate appellate courts, including ours, have examined and upheld charge language identical[5] to the text at issue here and identical or nearly

---

Our law provides that a person commits an offense of Continuous Sexual Abuse of a Child if the person, during a period that is 30 or more days in duration, commits two or more acts of sexual abuse, and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

The charge further instructed the jury that (1) it was not required to agree unanimously on which specific acts of sexual abuse were committed by Jones or the exact date when those acts were committed; but (2) to find Jones guilty of the charged offense, the jury "must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." Jones does not challenge these portions of the charge.

[5] The Thirteenth Court has also concluded the charge language at issue here was not erroneous even when placed before the indictment dates. *E.g.*, *Perez v. State*, No. 13-22-00292-CR, –S.W.3d–, 2024 WL 715326, at *6 (Tex. App.—Corpus Christi–Edinburg Feb. 22, 2024, no pet. h.) ("Now if you find . . . [Perez]

identical in form to the application paragraph here. *E.g. Lewis v. State*, No. 14-21-00691-CR, – S.W.3d – , 2023 WL 4873306, at *6 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, pet. ref'd); *Hernandez-Silva v. State*, No. 03-19-00219-CR, 2020 WL 4726632, at *7–8 (Tex. App.—Austin Aug. 14, 2020, pet. ref'd) (mem. op., not designated for publication); *Moreno v. State*, No. 14-18-00113-CR, 2019 WL 2000905, at *3 (Tex. App.—Houston [14th Dist.] May 7, 2019, pet. ref'd) (mem. op., not designated for publication); *McKinney v. State*, No. 05-14-01350-CR, 2016 WL 3963369, at *16 (Tex. App.—Dallas July 18, 2016, pet. ref'd) (mem. op., not designated for publication); *Quintero v. State*, No. 04-13-00596-CR, 2015 WL 1914595, at *1-2 (Tex. App.—San Antonio Apr. 15, 2015, pet. ref'd) (mem. op., not designated for publication); *Knowles v. State*, No. 04-12-00180-CR, 2013 WL 1149063, at *5 (Tex. App.—San Antonio Mar. 20, 2013, pet. ref'd) (mem. op., not designated for publication).

For example, in *McKinney*, the appellant challenged the following application paragraph:

> Now, if you find and believe from the evidence beyond a reasonable doubt that the defendant, DONALD RAY MCKINNEY, on or about September 1, 2007, in Dallas County, Texas, ***during a period that was***

---

did then and there, in Hidalgo County, Texas, *during a period that was 30 or more days in duration, to-wit: from on or about the 15th day of September, 2017, to on or about the 1st day of December, 2018, . . .* committed two or more acts of sexual abuse against . . . .") (emphasis added); *Chavez v. State*, No. 13-22-00551-CR, 2023 WL 5486232, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2023, no pet.) (mem. op. not designated for publication) (following language not erroneous: "*during a period that was 30 or more days in duration, to-wit: from on or about the 10th day of July, 2008, to on or about the 9th day of July, 2016*, when the defendant was 17 years or age or older, committed two or more acts of sexual abuse against . . . .") (emphasis added).

> **30 or more days in duration,** when the defendant was 17 years of age or older, intentionally or knowingly committed two or more acts of sexual abuse against [KE], a child younger than 14 years of age, hereinafter called complainant, namely by contact between the hand of defendant and genitals of complainant with the intent to arouse or gratify the sexual desire of defendant or by the penetration of the female sexual organ of complainant by the finger of defendant, then you will find the defendant guilty of continuous sexual abuse of a young child, as charged in the indictment.

*McKinney*, 2016 WL 3963369, at \*16 (emphasis added). Like Jones, McKinney argued the phrase "during a period that was 30 or more days in duration" allowed the jury to convict him if it found that he committed two acts of sexual abuse, regardless of the time frame. *Id.* There, as here, the abstract portion of the charge tracked the language of the statute. *Id.* We rejected McKinney's challenge to the application paragraph and concluded the charge was not erroneous because it tracked the applicable statutory language and accurately described the law. *Id.* More specifically, we concluded the phrase "during a period that was 30 days or more in duration" referred to the commission of two or more acts of sexual abuse within the specified time period and, therefore "the charge reflect[ed] the structure of the offense set forth in the statute." *Id.*

The Fourteenth Court recently reached the same conclusion as this Court did in *McKinney*. *Lewis*, 2023 WL 4873306, at \*7. In *Lewis*, as in *McKinney* and this case, the abstract and application paragraphs followed the statutory text of article 21.02(b). The abstract paragraph provided: "Our law provides that a person commits [the offense of continuous sexual abuse of a child] if during a period that is 30 or

–28–

more days in duration, the person commits two or more acts of sexual abuse [against a child] ..." *Id.* The application paragraph instructed the jury that to find appellant guilty, the jury must find that appellant, between "on or about the 9th day of October, 2016 continuing through the 15th day of May, 2019, did then and there unlawfully, during a period of time of thirty or more days in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age." *Id.* The *Lewis* court concluded the charge language was not erroneous:

> As in *Moreno*, the present charge clearly provided that two or more acts of sexual abuse, if the jury found they occurred, must have occurred during a period that continued for not less than thirty days in duration to support a conviction, and that the jury must unanimously so find. *See Moreno*, 2019 WL 2000905, at *3. Contrary to appellant's assertions, the jury could not properly have convicted appellant under this charge if the jury determined that appellant committed at least two acts of sexual abuse, all within a period of less than thirty days. Instead, jurors could only convict if the acts of sexual abuse occurred during a period of thirty or more days in duration. *See id.*; TEX. PENAL CODE § 21.02.

*Id.* The charge in this case, like the charges in *McKinney* and *Lewis*, referred to the required time period for commission of at least two acts of sexual abuse, not to the time period of the indictment. We, therefore, conclude the charge was not erroneous and overrule Jones's fourth issue.

Despite the opinions from this Court and our sister courts in the Third, Fourth, Thirteenth, and Fourteenth Courts of Appeals, Jones insists there is a split of authority concerning whether the language challenged here is erroneous. Jones relies on three cases to support this argument: *Smith v. State*, 340 S.W.3d 41, 51 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Turner v. State*, 573 S.W.3d 455, 461–62

(Tex. App.—Amarillo 2019, not pet.); and *Pelcastre v. State*, 654 S.W.3d 579, 585 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd). We find these cases inapplicable.

First, the decisions in *Smith* and *Turner* are inapposite because they involved materially distinguishable charge language from the case at bar. In *Smith*, the application paragraph stated the jury could find the defendant guilty of continuous sexual abuse of a child if two or more acts of sexual abuse occurred "on or about the 1st day of December, 2007, through the 1st day of September, 2008, *which said time period being a period that was 30 days or more in duration.*" 340 S.W.3d at 50 (emphasis added). The *Smith* court concluded the instruction was erroneous because it allowed the jury to find the defendant guilty regardless of whether the acts occurred at least 30 days apart:

> The precise phrasing in the application paragraph does not specifically require a finding that the last act of sexual abuse occurred on at least the 29th day after the day of the first act. Rather, it allows a finding of guilt if two or more acts of sexual abuse occurred "on or about the 1st day of December, 2007, through the 1st day of September, 2008, which said time period being a period that was 30 days or more in duration."

*Id.* The problem with the charge language in *Smith* was the placement of the statutory language, "during a period that is 30 or more days in duration":

> [T]he trial court misplaced the statutory language, "during a period that is 30 or more days in duration," in the instruction, so that it modified the time period during which the offense occurred. As a result, the charge merely made the irrelevant observation that the period specified in the indictment—between December 2007 and September 2008— was a time period that was thirty days or more in duration. It did not require the jury to find, as the Penal Code requires, that the defendant

–30–

committed the specified acts "during a period that is 30 or more days in duration."

*Knowles*, 2013 WL 1149063, at \*4 (distinguishing *Smith* and finding no error with charge language stating jury could find defendant guilty of continuous sexual abuse of a young child if the jury found beyond a reasonable doubt "that the defendant, during a period that is 30 or more days in duration, beginning on or after June 1, 2010 and through August 4, 2010, committed two or more acts of sexual abuse as alleged in the indictment."); *see also Quintero*, 2015 WL 1914595, at \*2 (same). The charge at issue here does not suffer from the same infirmity as the *Smith* charge.

In *Turner*, the Seventh Court of Appeals was faced with a challenge to an application paragraph similar to the charge found erroneous in *Smith*. Applying *Smith*, the Seventh Court concluded the charge was erroneous because the application paragraph "suggests to the jury that the thirty-day requirement was met if it found Appellant committed two or more acts during a period of thirty days or more, . . ." *Turner*, 573 S.W.3d at 463. Again, the charge at issue here is materially different from the *Turner* charge.

Moreover, we held *Smith* inapplicable in *McKinney* and do so again here. As our sister court noted in *Lewis*, the language challenged here, like the statute itself, referred to the required time period for commission of at least two acts of sexual abuse, not to the time period of the indictment:

> Unlike the charge in *Smith*, the charge here did not imply that because the dates alleged in the indictment were separated by more than thirty days, that alone was sufficient to satisfy the statute. Instead, the

language "during a period of time of thirty or more days in duration" refers to the "commit at least two acts of sexual abuse" language. Thus, the charge tracked the language of the statute, which provides that a person commits the offense of sexual abuse of a child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse." TEX. PENAL CODE § 21.02(b)(1).

*Lewis*, 2023 WL 4873306, at *7.

Here, unlike the charge language in *Smith* and *Turner*, the language "during a period that is 30 or more days in duration" in this charge is referable to the "commit two or more acts of sexual abuse" language. Consequently, the charge expressly requires a finding that Jones, during a period that is thirty or more days in duration, committed two or more acts of sexual abuse. The charge, therefore, reflects the language and structure of the offense as provided by the penal code and tracks the language of the relevant code provisions. *See* TEX. PENAL CODE § 21.02(b), (d); *see also Knowles*, 2013 WL 1149063, at *4–5.

Jones's reliance on *Pelcastre* is similarly misplaced. The charge language in *Pelcastre*, like the language at issue in *Smith* and *Turner*, is materially distinguishable from the charge language before us. 654 S.W.3d at 586. Moreover, in *Lewis*, the Fourteenth Court abrogated *Pelcastre* and, therefore, it does not support Jones's argument. *See Lewis*, 2023 WL 4873306, at *7 (holding charge language at issue in *Pelcastre* and *Lewis* was not erroneous and concluding "*Smith* is inapposite because it involved materially distinguishable charge language.").

As discussed above, we hold the charge accurately stated the law and properly charged the essential elements of the offense. Finding no error, we do not conduct a

harm analysis. *See Sakil*, 287 S.W.3d at 26 ("If there was no error, we need not pursue a harm analysis."). We overrule Jones's fourth issue.

## III.    Cumulative Error

In his final issue, Jones complains of cumulative error. He asserts "[t]he multiple hearsay errors and the charge error combined to undermine the fundamental fairness of the trial" and "[t]he cumulative effect of the errors denied" Jones due process and due course of law. We disagree. "It is conceivable that a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). But "[a] string of harmless errors does not arithmetically create reversible, cumulative error." *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal of petition for discretionary review). Rather, cumulative error occurs when multiple harmless errors act together and achieve "the critical mass necessary to cast a shadow upon the integrity of the verdict." *Id.*; *Balderrama v. State*, No. 04-21-00461-CR, 2023 WL 3609215, at *8 (Tex. App.—San Antonio May 24, 2023, no pet.) (mem. op., not designated for publication) (citing *Linney*, 413 S.W.3d at 767).

Here, we assumed without deciding that the trial court erred by admitting Mother's testimony about E.J.'s letter, S.J.'s statement during the forensic interview, and E.J.'s letter. But we concluded those errors were harmless and found no error with the jury charge. As discussed above, the record does not indicate the admission of Mother's testimony or of E.J.'s letter had a substantial and injurious effect or

–33–

influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Garcia*, 126 S.W.3d at 927. As for S.J.'s statement during the forensic interview, we concluded beyond a reasonable doubt that the error did not adversely affect the integrity of the process that led to the conviction and did not contribute to the conviction. *See Clark*, 282 S.W.3d at 930–31. Nothing in the record indicates the State used the evidence to an unfair advantage or that the admission of the evidence deprived Jones of any constitutional rights or rendered the trial fundamentally unfair. *See Flores*, 513 S.W.3d at 175; *see also U.S. v. Stephens*, 571 F.3d 401, 412 (5th Cir. 2009) (noting that cumulative-error doctrine compels relief only when constitutional errors "fatally infect the trial," depriving a defendant of fundamental fairness). Moreover, we conclude those three harmless errors did not act together to achieve "the critical mass necessary to cast a shadow upon the integrity of the verdict." *See Linney*, 413 S.W.3d at 767. Such errors, therefore, do not support a cumulative error claim. *See Washington v. State*, No. 05-22-00479-CR, 2023 WL 8733057, at *6 (Tex. App.—Dallas Dec. 18, 2023, no pet.) (mem. op., not designated for publication); *see also Lumsden v. State*, 564 S.W.3d 858, 899 (Tex. App.—Fort Worth 2018, pet. ref'd). Accordingly, we overrule Jones's final issue.

## CONCLUSION

For the foregoing reasons, we overrule Jones's appellate issues and affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARK ELLIOT JONES, Appellant

No. 05-22-00872-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-82412-2022.
Opinion delivered by Justice Partida-Kipness. Justices Reichek and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 24th day of April 2024.