**Nathaniel Dywane CLARK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–07–00256–CR.**

Court of Appeals of Texas, Beaumont.

Submitted Feb. 5, 2009.

Decided April 1, 2009.

---

1. *Griffin v. State,* 703 S.W.2d 193, 195 (Tex. Crim.App.1986).

2. *Mendez v. State,* 138 S.W.3d 334, 350 (Tex. Crim.App.2004).

3. *Id.*

4. *Id.; see* Tex.R.App. P. 33.1.

5. *Mendez,* 138 S.W.3d at 342.

6. *See id.* at 342, 350; *see also* Tex.R.App. P. 33.1.

Thomas J. Burbank, Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Wayln G. Thompson, Asst. Dist. Atty., Beaumont, for state.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

DAVID GAULTNEY, Justice.

A jury found Nathaniel Dywane Clark guilty of murder and assessed punishment at fifty years of confinement in the Texas Department of Criminal Justice Institutional Division. *See* TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 2003). Clark presents three issues for review. He argues the trial court erred by questioning two witnesses during trial in the presence of the jury. He maintains the trial court erred by allowing into evidence statements which he asserts are hearsay. Clark also argues that, in violation of his right to due process, the trial court deprived Clark of his right to confront witnesses as provided by the Confrontation Clause. Finding no reversible error, we affirm the judgment.

## FACTS

Miesha Ross testified that on the day of the shooting she and her fiancé, Corey Williams, went to a Beaumont apartment Clark shared with Sherry Woods. The four smoked marijuana and "embalming fluid" while they watched a movie in the living room. Clark began acting strangely and "saying things like he [was] going to have to kill everybody[.]" Ross attributed the strange behavior to the drugs. At first, Woods did not seem concerned, but Ross began to feel threatened and asked Woods to do something.

Clark went to the bedroom and returned waving a gun. Ross was scared. She went into the kitchen. Woods tried to get Clark to give her the gun clip. Ross went into the bathroom. She could see into the living room through a crack in the door. The other three were in the living room. Williams was sitting on the couch. Clark had the gun in his hand. Ross heard approximately five gunshots, but she could not see anyone; she then saw Woods holding her side. Woods left the apartment, and Clark followed her.

Ross found Williams on the couch. She saw blood stains on his shirt. As Ross fled, she saw Woods at an adjacent apartment building, and saw Clark in the parking lot. Woods, bleeding and screaming in pain, managed to fall into a neighbor's doorway.

The neighbor testified that he called 9–1–1. Clark approached and angrily told him to put the phone down. Clark "acted high" on drugs. The neighbor hung up the phone. Clark tried to pick up Woods; the neighbor told Clark to leave Woods alone, but to press a towel to her wound. The neighbor then left his apartment as EMS arrived. Woods survived, but Williams died at the scene.

## TRIAL QUESTIONING BY JUDGE

█ Clark complains of the trial judge's questioning of two witnesses in the jury's presence. The first instance involved questions to Officer Mireles, an officer who testified concerning the scene of the shootings:

[State]: Once the defendant was taken into custody, did you have occasion to approach the woman who was laying partial[ly] in and partially out of the apartment?

[Witness]: Yes, sir, I did.

. . . .

[State]: Were you able to determine if she was, in fact, injured in any fashion?

[Witness]: Yes, sir. She had a—what appeared to be a gunshot wound in her abdomen, stomach region.

. . . .

[State]: Did she indicate to you in any fashion how she became wounded?

[Witness]: Yes, sir, she did.

[Defense counsel]: That will be hearsay, Your Honor.

[State]: Your Honor, again, I've laid the predicate for excited utterance.

The Court: All right. The—the reason that this is being admitted for—is for what purpose now?

[State]: That she indicated who her assailant was while she was—or that she was able to respond to the officer when the officer asked who her assailant was, who had wounded her while she was still clearly suffering from the wound and still experiencing the fact of having suffered the wound.

The Court: And, Officer Mireles, you're—you were questioning this person for what purpose? Is this normal and customary in your investigation?

[Witness]: Initially, yes, sir. We try to determine who caused—what happened. In case she was injured or she wasn't going to live, at least we could have something from a witness or a victim of a crime to indicate what had happened from their—from their viewpoint.

The Court: Are you attempting to determine what should be done for treatment or getting her attended in some way for her wound?

[Witness]: Not necessarily; but at least we would know if it was a gunshot wound or a stab wound or something for EMS.

The court recessed and, out of the hearing of the jury, defense counsel stated the hearsay objection again. The trial court overruled the objection and admitted the statement. *See* TEX.R. EVID. 803(2) (excited utterance exception to hearsay rule). Defense counsel did not object to the trial court's questioning of the witness.

Clark also complains of an inquiry by the trial judge made to a ballistics expert. The State's ballistics expert explained that he tested the alleged murder weapon by test-firing the weapon into a water tank "maybe [three-and-a-half or four-feet] deep." After the attorneys concluded their questioning, the trial judge requested clarification:

The Court: Are you—from your experience and training, are you saying—and you use the method of firing into a water tank. But a bullet will only travel three or four feet in a tank of water?

[Witness]: Contrary to what we all—not all of us are old enough to watch Sea Hunt and some other things where the bullets travel many, many feet. The tank is maybe [three-and-a-half] feet deep and maybe 10 foot long; and I've shot everything in there from an M–16 to an AK–47 to every pistol that we've had, and we've never poked a hole in it yet.

The Court: Would you—so, water displaces the energy of a bullet very quickly?

[Witness]: Yes, sir. And a lot of that, again, is the angle, too. Now we're firing at a pretty steep angle, but it slows it down a lot. It doesn't harm the bullet. The bullet falls to the bottom. The bottom of the tank is like a bath mat on it. The bath mat is not chewed up; so, we can't actually see it as it happens. But that's how it works.

Counsel did not object to the trial judge's participation.

A trial judge should not make any statement calculated to impart to the jury in a criminal case the judge's opinion of the case. TEX.CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979); *Rodrigues v. State*, 8 S.W.2d 149, 150, 110 Tex.Crim. 267, 269 (1928). The Code of Criminal Procedure also provides that when ruling on the admissibility of evidence, a judge should simply state whether or not the evidence is admissible, and not discuss or comment upon the weight of the evidence or its bearing on the case. TEX.CODE CRIM. PROC. ANN. art. 38.05; *see also Rodrigues*, 8 S.W.2d at 150 ("[T]he court should refrain from active participation in the examination of witnesses[.]"). The Court of Criminal Appeals has cautioned: "We note that Texas' staunch loyalty to adversarial principles has been demonstrated in its stated disapproval of the nonadversarial practice of trial judges' examination of witnesses and in its rejection of Federal Rule of Evidence 614 which authorizes judges to call and interrogate witnesses." *Morrison v. State*, 845 S.W.2d 882, 888 n. 18 (Tex. Crim.App.1992). One risk is that the jury may perceive a question as indicating as-

sistance for the party who called the witness. *See Harrell v. State,* 39 Tex.Crim. 204, 225, 45 S.W. 581, 586 (1898). In *Harrell,* the Court explained: "It would be almost impossible for the court to take part in the examination of witnesses without impressing the jury with the belief that the court believed or disbelieved the testimony of the witnesses, whether the court intended to make such an impression or not." *Id.* The Court noted that it is not "any part of the duty of a judge to take in hand the examination or cross-examination of witnesses." *Id.* In *Blue v. State,* 41 S.W.3d 129, 132 (Tex.Crim.App.2000) (plurality op.), a trial judge's comments "which tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection."

■ None of the trial judge's questions to the witnesses in front of the jury in this case tainted the defendant's presumption of innocence or suggested partiality. *See Jasper v. State,* 61 S.W.3d 413, 421 (Tex. Crim.App.2001) ("None of the trial judge's comments rose to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury."). The trial judge's questions sought clarification, in one instance to assist in ruling on an objection, and in the other to clarify testimony already provided. *See id.* In these circumstances, counsel was required to object to the trial court's participation in questioning the witness to preserve the complaint for appellate review. *See* Tex.R.App. P. 33.1(a). Trial counsel did not object; therefore, the complaint was waived. Furthermore, we see no injury to Clark from the judge's participation in these two instances given the purpose and very limited scope of the questioning. *See generally Ash v. State,* 420 S.W.2d 703, 705 (Tex. Crim.App.1967). We overrule issue one.

EXCITED UTTERANCE

■ In his second issue, Clark argues that the trial court denied him his right as a matter of due process to confront Sherry Woods, an unavailable witness whose statements the trial court admitted against him. *See Clay v. State,* 240 S.W.3d 895, 902 (Tex.Crim.App.2007) ("This right was made applicable to state criminal prosecutions by the Due Process Clause of the Fourteenth Amendment."). In his third issue, Clark argues the trial court erred in ruling that Woods's statements fell under the excited utterance exception to the hearsay rule. He also argues that the Confrontation Clause barred the admission of the statements, because the State failed to prove that Clark had a prior opportunity to cross-examine Woods and that Woods was unavailable.

■ We consider the excited utterance exception first. An appellate court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Zuliani v. State,* 97 S.W.3d 589, 595 (Tex.Crim.App.2003). Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted. Tex.R. Evid. 801(d). For hearsay to be admissible, the statement must fit into an exception provided by a statute or the Rules of Evidence. Tex.R. Evid. 802; *see also Zuliani,* 97 S.W.3d at 595.

■ Rule 803(2) of the Texas Rules of Evidence sets out the excited utterance exception to the rule excluding hearsay. Tex.R. Evid. 803(2). An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* In determining whether a hearsay statement is admissible as an excited utterance, the court may consider the length

of time between the occurrence and the statement, the declarant's demeanor, whether the statement is made in response to a question, and whether the statement is self-serving. *Apolinar v. State*, 155 S.W.3d 184, 187 (Tex.Crim.App.2005). "The critical determination is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement." *Zuliani*, 97 S.W.3d at 596 (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.1992)).

Officer Mireles testified that he was dispatched to an apartment complex in Beaumont where a report indicated the possibility a man was armed. At least one other officer arrived at the scene before Mireles. Ten to fifteen seconds after arriving at the scene, Mireles identified a man who matched the suspect's description. Mireles saw Woods on the floor in the doorway of the apartment. She held a towel to her bleeding stomach and appeared to be in pain. She was kicking her feet, labored in her breathing, moaning, rolling her head, and fluttering her eyes. Mireles asked her what happened and she responded, "He shot me." Mireles was unsure of who she was referring to and asked her again. She again stated, "He shot me," and then pointed to Clark. At the time, no one had come forward as a witness, and EMS had not begun treating her. Mireles was trying to secure the crime scene.

Woods made the statements "relating to a startling event or condition," the shooting, while she was under the stress of excitement caused by the shooting. The trial court did not abuse its discretion by overruling Clark's hearsay objection to the statements. *See Zuliani*, 97 S.W.3d at 596 (statements of "scared to death" declarant repeatedly whispering "help me" to police officers twenty hours after being assaulted were an excited utterance); *Davis v. State*, 268 S.W.3d 683, 703–04 (Tex.App.-Fort Worth 2008, pet. filed) (statement to a police officer responding to a 9–1–1 call by a woman "clearly upset," crying, and with hands shaking badly was properly admitted by trial court as an excited utterance).

### THE CONFRONTATION CLAUSE

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. CONST. AMEND. VI. The Confrontation Clause is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403–05, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The principal concern of the Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Even when a statement offered against a defendant is admissible under evidentiary rules, the statement may implicate the Sixth Amendment's Confrontation Clause. *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex.Crim.App. 2006), *cert. denied*, 549 U.S. 1024, 127 S.Ct. 564, 166 L.Ed.2d 418 (2006); *see also Wall v. State*, 184 S.W.3d 730, 742 (Tex.Crim. App.2006) (holding that a statement admissible as an excited utterance could still constitute a testimonial statement for purposes of a Confrontation Clause analysis).

The Confrontation Clause bars the admission of testimonial statements of a witness who does not appear at trial, unless she was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158

L.Ed.2d 177 (2004). Clark argues the Confrontation Clause barred the admission of Woods's statements because the State failed to prove that Clark had a prior opportunity to cross-examine Woods and that Woods was unavailable.

Woods, Clark's girlfriend, survived the shooting. When Clark challenged Woods's unavailability, the State informed the trial court that investigators of the District Attorney's office and officers of the Sheriff's Department Warrant Division were unable to locate her at her last known addresses to execute subpoenas issued in the past as well as for trial.[1]

■ The State need not prove unavailability and prior opportunity for cross-examination to defeat a Confrontation Clause challenge unless the statement is covered by the Confrontation Clause because it is "testimonial." *See id.* at 68, 124 S.Ct. 1354. Said differently, the initial question to be addressed under the Confrontation Clause is whether the statement is "testimonial," because "[o]nly statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (citation omitted). In *Davis,* the Supreme Court explained the test it applied there:

> Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* (footnote omitted).

■ A court considers the totality of the circumstances in determining whether a statement is testimonial. The nonexclusive factors a court considers are: (1) whether the situation was still in progress; (2) whether the police questions sought to determine what was happening as opposed to what had happened in the past; (3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; (4) whether the questioning was conducted in a separate room, away from the alleged attacker; and (5) whether the events were deliberately recounted in a step-by-step fashion. *See Vinson v. State,* 252 S.W.3d 336, 339 (Tex.Crim.App.2008).

Mireles testified that when he asked Woods what happened, he was trying to secure the crime scene. Clark was in custody but no witnesses had come forward, and Mireles did not know if Clark was the correct suspect. Mireles wanted to know whether he had the correct suspect. Woods had not received medical treatment. Mireles asked her what happened in part to determine whether "it was a gunshot wound or a stab wound or something for EMS." Mireles testified his normal and customary initial investigation involves asking for the information to de-

1. The parties do not argue that the rule of forfeiture applies here. *See Davis v. Washington,* 547 U.S. 813, 833, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) ("That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.").

termine what happened, and also in the event "she wasn't going to live," he would "have something."[2] The questioning was in Clark's presence. The events were not deliberately recounted in a step-by-step fashion, and the questioning was not formal. Woods's statements were made at the scene while the situation was still in progress and while Woods was in distress.

As in *Vinson*, the trial court could reasonably find in this case that the officer was still assessing an emergency situation. *See Vinson*, 252 S.W.3d at 340. The trial court could reasonably conclude the primary purpose of the interrogation—even though not the only purpose—was to en-

able police assistance to meet the ongoing emergency. *See id.* Because of the non-testimonial nature of the statements, their admission did not violate the Confrontation Clause.

We overrule issues two and three. The trial court's judgment is affirmed.

AFFIRMED.

**2.** The Supreme Court in *Crawford* noted, "[w]e need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is *sui generis."* *Crawford*, 541 U.S. at 56 n. 6, 124 S.Ct. 1354.