

# NUMBER 13-22-00382-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

INDIRA RODRIGUEZ GONZALEZ
A/K/A INDIRA GONZALEZ,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

---

## On appeal from the County Court at Law
## of San Patricio County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Indira Rodriguez Gonzalez a/k/a Indira Gonzalez was convicted of driving while intoxicated (DWI), a class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04. The court assessed Gonzalez's punishment at 180 days in jail and suspended the sentence for a year. Gonzalez's sole issue on appeal is that her confrontation rights

under the Sixth Amendment of the United States Constitution and Article I, § 10 of the Texas Constitution were violated when the trial court admitted hearsay statements from Portland Police Department officers. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. We affirm.

## I.  BACKGROUND

At the beginning of trial, Gonzalez's defense counsel made an oral motion in limine regarding "any statements from any of the State's witnesses" about an alleged medical emergency from CCPD dispatch. The State provided the "call notes" from CCPD just minutes before trial and the defense argued the call notes and any discussion about a medical emergency should be excluded from evidence. The State argued that the defense had the Portland police report prior to trial, which included information that the testifying officers were responding to a possible medical welfare concern from CCPD. The court denied the defense's motion.

Sergeant Cody Renfro with the Portland Police Department testified he received a dispatch from CCPD of a possible "welfare concern for a driver [in a white Nissan Murano] that had stopped on the side of the road, possibly had a seizure, came to, and then continued to drive on." The driver stopped in Corpus Christi but continued driving toward Portland on Highway 181. Sergeant Renfro positioned himself off the Wildcat Exit of Highway 181 and observed a white Nissan Murano pass by. Sergeant Renfro later discovered that Gonzalez was operating this Nissan Murano.

 Sergeant Renfro testified that he pulled in behind Gonzalez's vehicle and observed it drift to the left and then "jerk" to the right. He activated his lights after Gonzalez drove through an intersection. He then watched as her vehicle, with its turn signal on,

2

straddled "the line between the middle lane and the right-hand lane" before making a wide right turn onto a residential street. The turn was so wide that Gonzalez's vehicle was on the wrong side of the street as she turned.

Sergeant Renfro then conducted a traffic stop. When Sergeant Renfro explained why he pulled Gonzalez over, he observed that she had a "wide-eyed stare" and was looking "straight forward." He shined his flashlight at her to see if she would react to the light but testified that "she had no reaction to the light" and "continued to stare straight forward," which indicated to him that "something was going on" with her. Gonzalez communicated that she did not speak English and Sergeant Renfro called Officer Jessica Gomez to interpret. After Officer Gomez's arrival, Sergeant Renfro observed the interaction between Officer Gomez and Gonzalez and testified that, though he could not understand their conversation, Gonzalez looked indifferent as to what was happening.

Officer Gomez testified that she asked Gonzalez if she had any medical conditions, and if she had experienced a seizure, to which Gonzalez responded no. Officer Gomez then asked her whether she had been drinking and Gonzalez admitted that she had "[t]hree, four, five, or six [drinks]" that night. Officer Gomez described Gonzalez as "incoherent" and "very hard to understand," and that it seemed like Gonzalez's "thought process was slow." Officer Gomez performed a field sobriety test, during which Gonzalez's reactions indicated six out of six intoxication "clues." After the first test, Gonzalez asked, "Is there somewhere around here that I could just go to sleep?" and refused to do any more sobriety tests. Officer Gomez could smell alcohol on Gonzalez and observed her "swaying as she was standing there." Officer Gomez placed Gonzalez under arrest and transported her to the police station.

3

Sergeant Renfro met Officer Gomez at the police station to give Gonzalez an intoxilyzer test, or a "breath" test. Both officers testified that Gonzalez was uncooperative when undergoing the intoxilyzer test because, while they explained to her several times how to blow on the instrument to get an accurate reading, "she would only blow for a couple of seconds and then stop." Officer Gomez testified that the instructions were simple, and she communicated them to Gonzalez in Spanish. The officers were unable to get a reading on the intoxilyzer device after several tries and interpreted Gonzalez's actions as a refusal to provide a breath sample.

During trial, the defense objected three times to references to the CCPD dispatch in the officers' testimonies. This included the beginning of Sergeant Renfro's testimony in which he stated that he was responding to a CCPD dispatch about a possible "welfare concern," and two references to the CCPD dispatch from Officer Gomez.[1] The defense's objection to Sergeant Renfro's testimony was overruled but her two objections to Officer Gomez's testimony were sustained.

The jury found Gonzalez guilty of DWI. *See* TEX. PENAL CODE ANN. § 49.04. The court sentenced Gonzalez as described above. This appeal followed.

---

[1] The objected-to testimony from Officer Gomez was as follows:

[Gomez]: I get to the scene, and he's explaining to me, of course, the call had come out of a—of a driver—from Corpus Christi, through our dispatch, stating via radio—

[Defense]: Your Honor, I'm going to object to hearsay. [Objection is sustained]

. . . .

[Gomez]: So[,] I told [Gonzalez] . . . the reason for the stop is because we got a call from Corpus Christi stating that she had made a stop somewhere. And I asked her if she had any type of medical problems, and she said no. I said, okay, someone called in saying that you had—

[Defense]: Objection, Your Honor. That calls for hearsay. [Objection is sustained]

4

## II. DISCUSSION

By her sole issue, Gonzalez argues the admission of the officers' statements about the dispatch call into evidence violated her rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. *See* U.S. CONST. amend. VI.[2]

### A. Standard of Review

The Confrontation Clause of the Sixth Amendment, made applicable to the states via the Fourteenth Amendment, guarantees an accused the right to confront and cross-examine adverse witnesses. U.S. CONST. amends. VI, XIV; *Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008); *Clark v. State*, 282 S.W.3d 924, 930 (Tex. App.—San Antonio 2009, pet. ref'd). The principal concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. *Clark*, 282 S.W.3d at 930 (citing *Maryland v. Craig*, 497 U.S. 836, 845 (1990)). "Face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." *Craig*, 497 U.S. at 846.

Even when a statement offered against a defendant is admissible under evidentiary rules, the statement may nonetheless implicate the Confrontation Clause of the Sixth Amendment. *Clark*, 282 S.W.3d at 930. An out-of-court statement implicates the Confrontation Clause when it is: (1) made by a witness who is absent from trial and (2) testimonial in nature. *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011).

---

[2] We note that Gonzalez also argues that the trial court violated her state Confrontation Clause right. *See* TEX. CONST. art. I, § 10. "However, Texas courts decline to apply the state Confrontation Clause guarantee in a broader manner than the federal Confrontation Clause guarantee." *McWilliams v. State*, 367 S.W.3d 817, 820 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also Gonzales v. State*, 818 S.W.2d 756, 764 (Tex. Crim. App. 1991) ("[W]e will use the same analysis applied in *Craig* to determine if the State Constitution has been violated[.]"). Accordingly, we limit our analysis to the United States Constitution.

Whether a statement is testimonial is judged "by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant." *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006) (citing *Crawford v. Washington*, 541 U.S. 36, 52 (2004)). Because trial courts are no better equipped to apply this standard than appellate courts, we review whether a statement is testimonial de novo. *Id.*

## B. Analysis

In its brief, the State contends that Gonzalez failed to preserve her Confrontation Clause complaint. To preserve error, the complaint on appeal must comport with the objection lodged in the trial court. *See* TEX. R. APP. P. 33.1; *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) ("It is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial.").

Gonzalez's trial counsel objected only that the officers' testimony contained hearsay and not that their statements violated the Confrontation Clause.[3] Accordingly, because Gonzalez's appellate complaint does not comport with her objection in the trial court, she has not preserved her Confrontation Clause complaint for appellate review. *See Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005) (holding that the appellant waived his issue under the Confrontation Clause when he did not mention it during his proffer of evidence to the trial court); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. 2004) (concluding that a hearsay objection failed to preserve a Confrontation Clause complaint to the admission of out-of-court statements); *Lopez v. State*, 200 S.W.3d 246, 255 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("The context only

---

[3] We note that Gonzalez does not specify what testimony she argues is inadmissible and does not provide citations to the record to the objected-to testimony. We construe her brief to mean the three objections lodged at trial described in the background section. *See* TEX. R. APP. P. 38.9 (requiring appellate courts to construe briefs liberally).

supports a hearsay objection, and a hearsay objection will not preserve error on confrontation grounds." (citing *Paredes*, 129 S.W.3d at 535)); *see also Gonzales v. State*, No. 13-18-00336-CR, 2019 WL 4866038, at *3 n.6 (Tex. App.—Corpus Christi–Edinburg Oct. 3, 2019, no pet.) (mem. op., not designated for publication) (concluding appellant did not preserve Confrontation Clause complaint because he failed to object on that basis in the trial court).

In any event, constitutional error is not reversible if we determine beyond a reasonable doubt that the error did not contribute to the conviction. TEX. R. APP. P. 44.2(a); *see Simpson v. State*, 119 S.W.3d 262, 269–71 (Tex. Crim. App. 2003) (applying Rule 44.2(a) harmless error standard to a Confrontation Clause claim). When analyzing constitutional error, "the question for the reviewing court is not whether the jury verdict was supported by the evidence." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). "Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberation in arriving at th[eir] verdict—whether, in other words, the error adversely affected 'the integrity of the process leading to the conviction.'" *Id.* (quoting *Harris v. State*, 790 S.W.2d 568, 588 (Tex. Crim. App. 1989), *disagreed with on other grounds by Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011)).

The testimony from Sergeant Renfro and Officer Gomez describing Gonzalez's driving, appearance, mannerisms, and apparent refusal to provide a breath sample, is much more incriminating than their testimony that they were responding to a possible medical concern from a CCPD dispatch. Furthermore, videos from Sergeant Renfro's bodycam, Officer Gomez's bodycam, and Sergeant Renfro's dashcam were admitted into

7

evidence and played for the jury.[4] The jury was able to observe Gonzalez's driving before the traffic stop and her mannerisms during the traffic stop. It is extremely unlikely that the testimony concerning the dispatch played any role in the jury's deliberation, given the factual crux of the underlying case involved the events that occurred after Sergeant Renfro observed Gonzalez's vehicle, not before. *See Snowden*, 353 S.W.3d 825. Therefore, we conclude beyond a reasonable doubt that the officers' testimony that they received a dispatch from CCPD about a driver with possible medical issues did not contribute to Gonzalez's conviction, and error, if any, was therefore harmless. *See* TEX. R. APP. P. 44.2(a); *Simpson*, 119 S.W.3d at 271 (finding Confrontation Clause violation to be harmless error where evidence of guilt was strong and erroneously admitted statement was corroborated by other evidence). We overrule appellant's sole issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
14th day of December, 2023.

---

[4] We note that the videos were played to the jury without an English translation of the conversation between Officer Gomez and Gonzalez.