

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00052-CR

_____

CLETUS RAY MALONE, Appellant

V.

THE STATE OF TEXAS

On Appeal from 372nd District Court
Tarrant County, Texas
Trial Court No. 1783496

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Cletus Ray Malone appeals his conviction for aggravated robbery. *See* Tex. Penal Code Ann. § 29.03(a). Raising two evidentiary issues, he argues that the trial court abused its discretion by admitting (1) an FBI agent's report analyzing call-detail and Google-location-history records pertaining to a cellphone found on Malone's person when he was arrested and (2) a pawnshop receipt in Malone's name that contained his identifying information, including a phone number matching the number associated with the recovered cellphone. Because Malone's evidentiary complaints lack merit, we affirm.

## II. BACKGROUND

Around 11:30 a.m. on June 5, 2023, a robber stole approximately $916 in cash from a Kroger grocery store in North Richland Hills. Security-camera footage revealed the robber to be an older black male wearing blue jeans and a plaid shirt and showed him escaping in a silver minivan with a covered license plate and paint blemishes over the right rear wheel.

North Richland Hills Police Detective Cody Brock, who was assigned as the lead investigator, discovered security footage from a nearby business that showed the robber pulling into a parking lot and covering his license plate on the way to the Kroger. On the security footage, the robber was wearing the same clothing that he was wearing during the robbery. License-plate readers from the area captured the

2

silver minivan's license plate a mile away from the Kroger twenty minutes before the robbery. The van's license plate was registered to Malone, and his physical description and photograph on file as the vehicle's owner matched the appearance of the robber.

Over the next few days, similar robberies were committed at a number of area grocery stores. At each location, the robber followed a similar modus operandi, wore similar clothing, and drove a silver minivan with an obstructed license plate and paint blemishes over the right rear wheel.

On June 9, 2023, during an attempted robbery at a Kroger grocery store in Arlington, the robber left behind a receipt from a vehicle loan that bore Malone's name and address. The fingerprints found on the receipt did not match Malone's, but a check of the surveillance footage in the area confirmed that Malone's minivan had been at the entrance of the Kroger parking lot shortly before the attempted robbery had taken place.

That evening, Fort Worth police followed Malone as he drove his minivan from his house to a nearby strip mall. When one of the officers stopped Malone, he initially gave a false name and fake identification. After Malone's identity was confirmed, he was arrested.

When he was arrested, Malone had three cellphones in his pockets. The police obtained a search warrant authorizing them to extract and analyze the data from all three cellphones. They also obtained a search warrant for Malone's Google data as

3

well as his T-Mobile records. Analysis of this data revealed that these cellphones had been used to search for and obtain directions to many of the grocery stores that had been robbed.

The data also showed that the cellphones found on Malone had been used to search online for pawnshops. Based on this data, Detective Brock searched the Leads Online database of all pawnshop transactions and found a pawn ticket reflecting that Malone had sold an item on June 5, 2023.[1] The receipt included Malone's name; date of birth; address; and—most significantly—phone number, which matched the number of one of the recovered cellphones.

Ultimately, Malone was charged by indictment with aggravated robbery. He pleaded not guilty, and a jury trial was held.

One of the State's witnesses was FBI Special Agent Pamela Hanson, who had analyzed the data from the three cellphones found on Malone at the time of his arrest. Special Agent Hanson prepared a report summarizing her analysis that included a map of the Google location data from the cellphone with the number matching the one on the pawn ticket. When the State offered Special Agent Hanson's report as State's Exhibit 87, Malone objected to the portion of the exhibit that was drawn from the cellphone-location data that had not been previously admitted into evidence. To

---

[1]As Detective Brock explained at trial, when someone sells an item to a pawnshop, the seller is generally required to provide identification. That identification information is then logged, and a pawn ticket is generated. Leads Online is a database that allows searches of those tickets by date range.

satisfy that objection, the State offered the underlying cellphone-location data provided by Google for record purposes only as State's Exhibit 119. Exhibit 119 included a letter from Google's records custodian and a digitally signed business-records declaration confirming that the records had been kept in the course of a regularly conducted business activity.

Malone then objected that the business-records declaration failed to satisfy the applicable requirements and argued that the State's failure to authenticate the cellphone-location data in Exhibit 119 meant that the information should be excluded from Exhibit 87. *See* Tex. Civ. Prac. & Rem. Code Ann. § 132.001(c), (d); Tex. R. Evid. 803(6), 902(10). Malone also asserted that the cellphone-location data was testimonial hearsay and that its admission would violate the Sixth Amendment's Confrontation Clause. *See* U.S. Const. amend. VI. The State responded that the cellphone-location data did not constitute a "statement," much less a testimonial statement for purposes of the Confrontation Clause. After considering the parties' arguments, the trial court overruled Malone's objections and admitted Exhibit 87.

Later, the State offered the pawn ticket reflecting Malone's phone number into evidence as Exhibit 100. Malone objected on authentication, hearsay, and Confrontation Clause grounds. After hearing arguments from both parties, the trial court overruled Malone's objections and admitted the pawn ticket into evidence.

After considering all of the evidence, the jury found Malone guilty. During the trial's punishment phase, the jury found Malone to be a habitual offender and

assessed his sentence at ninety-nine years in prison. The trial court sentenced him accordingly. This appeal followed.

## III. DISCUSSION

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

### B. Admission of State's Exhibit 87

In his first issue, Malone contends that the trial court abused its discretion by admitting State's Exhibit 87 because the underlying cellphone-location data was not properly authenticated and constituted hearsay. Alternatively, he argues that the admission of State's Exhibit 87 violated his rights under the Confrontation Clause because the underlying cellphone-location data was testimonial in nature. We disagree.

#### 1. Authentication Analysis

Authentication requires only "evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a); *Butler v. State*,

6

459 S.W.3d 595, 605 (Tex. Crim. App. 2015). Authentication "can be accomplished in a myriad of ways, depending upon the unique facts and circumstances of each case, including . . . through evidence showing distinctive characteristics." *Butler*, 456 S.W.3d at 601. The authentication methods listed in Rule 901(b) are not exhaustive; authenticating evidence need not exhibit any particular form or content and may be either direct or circumstantial. *See id.* at 602; *Jones v. State*, 572 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2019, no pet.). As long as the "fact-finder could rationally choose to believe the sponsoring witness, and the witness's testimony would establish that the item proffered 'is what its proponent claims[,]'" a trial court does not abuse its discretion by admitting it. *Butler*, 456 S.W.3d at 605. "Conclusive proof of authenticity . . . is not required." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).

Here, even if the business-records declaration attached as part of State's Exhibit 119 did not satisfy the requirements of the business-records exception to the hearsay rule, *see* Tex. R. Evid. 803(6); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 132.001(c), (d), it nevertheless established that the location data came directly from Google in response to a search warrant.[2] And on voir dire, Special Agent Hanson confirmed that Google had, in fact, provided the data in response to a warrant.

---

[2]As discussed below, the trial court could have reasonably concluded that the location data did not constitute hearsay. Thus, the declaration's purported failure to satisfy the business-records-exception requirements is inconsequential.

7

Special Agent Hanson also testified to her specialized training and knowledge in obtaining and mapping cellphone data to establish locations. And Exhibit 87 itself describes how she compared this data with other information obtained from the cellphone, including call-detail records for the target cellphone, as part of her analysis. This type of historical cell-site analysis involving both cellphone location data and other information obtained from the cellphone effectively provides independent corroboration of the location data. *See Melson v. State*, No. 09-22-00072-CR, 2024 WL 2949044, at *6 (Tex. App.—Beaumont June 12, 2024, no pet.) (mem. op., not designated for publication) (citing *Wells v. State*, 675 S.W.3d 814, 830 (Tex. App.—Dallas 2023), *aff'd*, 714 S.W.3d 614 (Tex. Crim. App. 2025)). Given this evidence, the trial court could have reasonably concluded that the cellphone-location data reflected in State's Exhibit 87 was sufficiently authenticated. *See id.*; *see also Lehrman v. State*, No. 02-25-00057-CR, 2025 WL 1668341, at *2 (Tex. App.—Fort Worth June 12, 2025, no pet.) (mem. op., not designated for publication) ("[An item's] admission into evidence 'merely requires some evidence sufficient to support a finding that [the proffered item] is what the proponent claims.'" (quoting *Fowler*, 544 S.W.3d at 848)).

### 2. Hearsay Analysis

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). The rules of evidence define "statement" as "a *person's* oral or written verbal expression, or nonverbal conduct that a *person* intended as a substitute for verbal

8

expression" and "declarant" as "the *person* who made the statement." Tex. R. Evid. 801(a)–(b) (emphasis added). Given these definitions, the trial court could have reasonably concluded that the cellphone-location data—which was entirely computer-generated—was not hearsay because it was not a "statement" made by a "declarant." *See Melson*, 2024 WL 2949044, at *6 ("The trial court could have concluded that the [cellphone-]location data was not hearsay because the definition of hearsay requires an out-of-court statement by a declarant, and the data from the service provider's portal or computer is not considered a declarant for purposes of the hearsay rule."); *see also Nguyen v. State*, No. 05-20-00241-CR, 2022 WL 3714494, at *8 (Tex. App.—Dallas Aug. 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("The black box of appellant's vehicle is a computer and, by definition, cannot be a declarant for purposes of the rule against hearsay." (citing *Stevenson v. State*, 920 S.W.2d 342, 343 (Tex. App.—Dallas 1996, no pet.) (en banc))); *Murray v. State*, 804 S.W.2d 279, 284 (Tex. App.—Fort Worth 1991, pet. ref'd) (admonishing that "it would be incorrect to assume that a hearsay problem is present *anytime* a machine 'talks,' transmits data, or otherwise communicates information" and clarifying that "[m]echanical devices . . . are not persons and cannot be 'declarants.' But they can serve as vehicles for storing or transmitting 'statements' made by a 'person.'" (quoting David A. Schlueter, *Hearsay—When Machines Talk*, 53 Tex. Bar J. 1135 (1990)))).

### 3. Confrontation Clause Analysis

The Sixth Amendment's Confrontation Clause, made applicable to the states through the Fourteenth Amendment, provides that "[in] all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amends. VI, XIV; *see Smith v. Arizona*, 602 U.S. 779, 783, 144 S. Ct. 1785, 1791 (2024). Once a defendant raises a Confrontation Clause objection, the burden shifts to the State to establish either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) that the statement does contain testimonial hearsay but is nevertheless admissible. *See De La Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008).

"[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Adkins v. State*, 418 S.W.3d 856, 861–62 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (quoting *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013)). A court considers the totality of the circumstances in determining whether a statement is testimonial. *Clark v. State*, 282 S.W.3d 924, 931 (Tex. App.—Beaumont 2009, pet. ref'd).

As Malone acknowledges, his argument that the admission of the cellphone-location data in State's Exhibit 87 violated his confrontation rights conflicts with our recent holding in *Wilkinson v. State*, No. 02-24-00316-CR, 2025 WL 2552336 (Tex. App.—Fort Worth Sept. 4, 2025, pet. ref'd) (mem. op., not designated for

publication). In *Wilkinson*, we held that the trial court did not violate the appellant's confrontation rights by admitting data extracted from a cellphone because "reports containing only 'raw, computer-generated data' are not testimonial for purposes of confrontation." *Id.* at *2–3 (quoting *Hill v. State*, No. 02-21-00172-CR, 2023 WL 1859795, at *6 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (mem. op., not designated for publication)). Given our holding in *Wilkinson*, we conclude that the trial court did not violate Malone's confrontation rights by admitting the computer-generated cellphone-location data contained in State's Exhibit 87.[3] *See id.*

### 4. Disposition

Having rejected all of Malone's complaints regarding the admission of State's Exhibit 87, we overrule his first issue.

## C. Admission of State's Exhibit 100

In his second issue, Malone contends that the trial court abused its discretion by admitting State's Exhibit 100—the pawn ticket—because it contained testimonial hearsay and therefore violated his rights under the Confrontation Clause. We disagree.

---

[3]The cover letter and business-records declaration that accompanied the cellphone-location data reflected that the information had been obtained and retained as part of Google's ordinary business operations. Thus, even if the data were not wholly computer-generated, it would still not be testimonial because it was not created or obtained in anticipation of a later trial. *See Adkins*, 418 S.W.3d at 861–62.

11

As noted, the Confrontation Clause bars only statements that are testimonial in nature—i.e., those made for the purpose of establishing some fact at trial. *See Adkins*, 418 S.W.3d at 861–62. Accordingly, statements in records that would exist as part of business records even if no criminal charges had ever been filed are not testimonial, and the admission of such records does not violate the Confrontation Clause. *See LaMotte v. State*, No. 01-15-00368-CR, 2016 WL 3964898, at *7 (Tex. App.—Houston [1st Dist.] July 21, 2016, no pet.) (mem. op., not designated for publication).

Here, the pawn ticket admitted as State's Exhibit 100 documented a pawnshop transaction as part of the pawnshop's ordinary business operations; it was not generated for the purpose of establishing some fact at trial. Indeed, as the State points out, the pawn ticket was created at 9:37 a.m. on June 5, 2023—approximately two hours *before* Malone's first robbery. Accordingly, the pawn ticket is not testimonial, and its admission did not violate Malone's confrontation rights. *See Garraway v. State*, No. 03-14-00595-CR, 2017 WL 1404726, at *4 (Tex. App.—Austin Apr. 11, 2017, no pet.) (mem. op., not designated for publication) (holding that the admission of an exhibit consisting of Leads Online pawnshop sales data did not violate the appellant's confrontation rights because it contained "data showing pawnshop transactions that were documented as part of the pawnshops' ordinary business operations, the data was not created for the purpose of establishing some fact at trial, and the data would have existed even if charges had never been filed against [the appellant]").

12

We overrule Malone's second issue.

## IV. CONCLUSION

Having overruled both of Malone's issues, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 8, 2026